### 50497. WALLACE v. THE STATE.

DEEN, Presiding Judge.

1. The defendant on trial for sale of cocaine was introduced by an acquaintance, Lewis Padillo, to a police detective represented to him as being a potential purchaser of large amounts of this drug. Wallace admittedly sold the detective two ounces of white powder for $1,600 with the statement that it was weak cocaine, about 30%. The powder was turned over to the crime laboratory which after testing announced that it contained some 53% xylocaine, a prescription anesthetic drug of the order of novocaine sometimes used for cutting cocaine and heroin. A demand for retest produced an analysis of approximately the same amount of xylocaine plus 2.5% cocaine. Expert testimony was offered as to the manner of testing tending to support the explanation that the very large amount of xylocaine so overshadowed the

cocaine present, and the tests for the two drugs were so similar, that the presence of cocaine was ignored on the first test. The defendant's admission that he sold the substance representing it to be cocaine plus evidence which, if believed, established that there was in fact some cocaine in the mixture, sufficiently supported the verdict. The actual amount of contraband present is not determinative. Cf. *Frazier v. State,* 27 Ga. App. 261 (1b) (107 SE 896).

2. The defendant filed motions to (a) allow his expert to test the contraband, and (b) supply him with xylocaine for further testing. The court entered an order permitting the expert to use the facilities of the state laboratory to test the contraband but denied the motion to compel the state to furnish xylocaine to his witness. We are cited to no authority under which such a refusal would constitute reversible error.

3. The informer Lewis Padillo was eventually discovered languishing in a Florida jail, and defendant moved for a writ of habeas corpus ad testificandum "to prove his affirmative defense of entrapment." Counsel admitted that he had not talked with Padillo, but produced Padillo's brother who testified the informer had been angry at Wallace and had threatened to "rip him off." This is a far cry from the showing asked for by the trial court, who stated that if given assurances that Padillo's testimony, as established by a preliminary interview, would support an entrapment defense he would endeavor to see if the witness could be obtained, although he knew of no means by which he could compel Florida authorities to surrender him. The assurances were not forthcoming, and the court properly denied the motion. The courts have no compulsory process outside the boundaries of this state. Code § 24-2613; *Turner v. McGee,* 217 Ga. 769, 777 (2) (125 SE2d 36); *Reid v. State,* 119 Ga. App. 368 (5) (166 SE2d 900).

4. The court charged the jury in part: "If you find in connection with Count 2 that cocaine was in fact sold as alleged in Count 2, the amount of such cocaine allegedly sold is not material to your decision. . . Unless you believe beyond a reasonable doubt that the material allegedly sold was in fact part cocaine this defendant could not be

found guilty of the offense as charged in Count 2." This instruction was sufficient without instructing the jury in the same connection that the defendant was *not* charged with the offense of selling xylocaine. Enumerations of error 18 and 22 are without merit.

5. We disagree with appellant, who requested a charge on circumstantial evidence, in the statement that while the sale, and the representation that the powder was cocaine, is admitted, the *fact* of the presence of cocaine depends on circumstantial evidence. The testimony of an expert may be a conclusion, but it is direct testimony, the credit due which is entirely for the jury. *Holmes v. Harden,* 96 Ga. App. 365 (8) (100 SE2d 101). Testimony that the powder contained cocaine was direct, not circumstantial, and it was not error to deny the request. Further, Hendrix testified that he also did a field test on the substance and that it was cocaine, which testimony was admissible for the same reason. Enumerations 13 and 15 are not meritorious.

6. Enumerations 16 and 17 complain of admission of evidence tending to show other criminal transactions. As a part of the transaction of sale for which the defendant is on trial, the detective testified that there was a conversation about future supplies. The detective asked the defendant for his home telephone number, at which the defendant became very upset and answered, "No, the Cobb County Police Department has kicked my door down twice." It was then agreed that there would be a sale of two pounds of cocaine for $32,000 to be handled through a restaurant of which the defendant was manager, in about two weeks. Both these statements were admissible. They were intimately connected with the sale taking place, were a part of the same conversation, and had some probative value as indicating that the defendant knew he was selling cocaine, not just xylocaine. The court properly admitted the statements as a part of the res gestae. *Tiller v. State,* 196 Ga. 508 (5) (26 SE2d 883).

7. Under our present Code Ann. § 27-2503 (Ga. L. 1974, pp. 352, 357) the trial judge in non-capital cases conducts the pre-sentence hearing and may hear evidence "including the record of any prior criminal convictions." Considering that a jury is not involved, this language is

broad enough to include the conviction and sentence for a crime committed after the crime for which the defendant is on trial, but prior to the trial in which the sentencing hearing is being conducted.

8. The jurors were polled and the following took place: "Clerk: Is this your verdict? Juror: Yes, it is. Clerk: Was this your verdict in the jury room? Juror: My verdict is guilty. Clerk: If it was your verdict just say yes or. . . Juror: Well, it's my verdict, it's my verdict. Clerk: Is this your verdict now? Juror: There were question marks, but it's my verdict." The answer was sufficient. *Hill v. State,* 64 Ga. 453.

9. A witness for the state testified, as to the xylocaine content of the powder: "Xylocaine is placed under the pharmacy code, the reason being that there is some danger involved in it because of the fact that. . . it's somewhat dangerous in that 400 milligrams per kilogram of body weight, or for a 150-pound man, the lethal dose would be. . . a matter of roughly 22.4 grams of material that would have to be present in the body, that is what is considered a median dose and that would be enough to cause a death in approximately 50 percent of the population, that is a fairly large amount, but it was placed under the pharmaceutical code and you can't go to the drugstore without a prescription and obtain anything that contains above a very meager amount of xylocaine. . . I want to emphasize that it is under the pharmacy code for a particular reason, and since it was present in this case and listed as a Code P item in my report, I felt I should mention something about it. Q. All right, sir. Now, what does the figure 22.4 grams represent to you now? A. That would be considered the median lethal dose for a 150-pound man. That is quite considerable. There are 28.35 grams in an ounce, so you are taking about roughly an ounce of the drug in the body at a given time. . . which would be sufficient to cause death."

We agree with counsel for the defendant that, as the defendant was not charged with the sale of xylocaine, the extended discussion, over numerous objections and a motion for mistrial, as to its lethal effect, was entirely irrelevant and could not help but have been prejudicial and inflammatory. Especially so since, again over ob-

jection, the court allowed another protracted discussion of the lethal effects of cocaine, under the guise of explaining its chemical difference from xylocaine. The admission of these blocs of evidence over objection was error. *Spencer v. State,* 95 Ga. App. 454 (98 SE2d 94); *Hegin v. State,* 86 Ga. App. 92 (2) (70 SE2d 795). Enumerations of error 8, 9, 10 and 11 are well taken.

    *Judgment reversed. Evans and Stolz, JJ., concur.*

ARGUED APRIL 9, 1975 — DECIDED APRIL 17, 1975 —
REHEARING DENIED MAY 6, 1975.

*Karp & Karp, Barry A. Karp,* for appellant.
*Lewis R. Slaton, District Attorney, Guy E. Davis, Jr., H. Allen Moye, Assistant District Attorneys,* for appellee.