29464. ORKIN et al. v. THE STATE.

HILL, Justice.

Defendants William B. Orkin and Bobby Charles Bowen appeal from a verdict of guilty of the crime of "conspiracy to commit murder" and jury sentences of five years imprisonment as to each defendant. The main issues on appeal involve the crime of conspiracy (Division 1) and the admission of certain electronic recordings into evidence (Divisions 2 and 3). Also in issue are the trial court's rulings on various motions and objections made by the defendants prior to and during trial, as well as the charge of the court. This conspiracy allegedly occurred in

the summer of 1974. Other facts will be stated as they become necessary for consideration of the 27 enumerated errors.

1. Defendants' Enumerations 3 and 5 assert that the trial court erred in denying their motions to dismiss the indictment and in arrest of judgment, which motions were based upon the defendants' contention that the Act creating the crime of "conspiracy to commit a crime," Code § 26-3201, is unconstitutional as containing matter not expressed in the title in contravention of Art. III, Sec. VII, Par. VIII of the Georgia Constitution (Code Ann. § 2-1908). Defendants further contend that, if Code § 26-3201 is constitutional, it does not create the crime charged, i.e., conspiracy to commit murder, and that the indictment was deficient in that it did not allege murder "with malice aforethought."

Prior to 1968, there was no Georgia statute declaring that conspiracy to commit a crime was a crime as such. In 1968, the General Assembly enacted a conspiracy statute, under a proper title (Ga. L. 1968, p. 326), declaring it to be Code § 26-1902 and part of Code Ch. 26-19. At that same session, the General Assembly enacted the new Criminal Code of Georgia and included therein as Code § 26-3201, under Ch. 26-32, the crime of conspiracy (Ga. L. 1968, pp. 1249, 1335). The new Code repealed former Code Ch. 26-19 (Ga. L. 1968, p. 1338). However, the title to the new Criminal Code omitted reference to Ch. 32—Conspiracy (Ga. L. 1968, pp. 1258-1259).

In 1969, the General Assembly under a proper title, amended the new Code so as to repeal and re-enact the crime of conspiracy as Code § 26-3201 (Ga. L. 1969, pp. 857, 858, 867). Defendants argue that the 1969 Act cannot create the crime of conspiracy because in one and the same Act the same subject matter was repealed and re-enacted. They also argue that the 1969 re-enactment, with a proper title, was nugatory because the 1968 enactment was nugatory for lack of a proper title. The effect of these arguments is that once reference to conspiracy was omitted from the title of the new Criminal Code, the General Assembly was powerless to correct the omission. We disagree; Code § 26-3201 (Ga. L. 1969, pp. 857, 867) was validly enacted.

Defendants contend that Code § 26-3201 does not create the crime of "conspiracy to commit *murder*."[1] The crime of conspiracy, or of criminal attempt (Code § 26-1001), can only be defined in conjunction with a second criminal Code section, i.e., the substantive crime involved in the conspiracy or attempt. Code § 26-3201 together with the substantive offense of murder, Code § 26-1101, created the crime with which the defendants were charged.

Defendants contend that the indictment charging them with the offense of "conspiracy to commit murder" upon a named person, and specifying three overt acts (paying $7,500, furnishing shotgun and describing victim's daily routine), is defective in that it fails to allege "malice aforethought" so as to distinguish the crime charged from felony murder, Code § 26-1101 (b). A person who conspires to commit murder does so with malice aforethought. The indictment described the crime with sufficient definiteness to inform the defendants and the jury of the charges against them. *Chenault v. State,* 234 Ga. 216 (6) (215 SE2d 223) (1975); Code § 27-701.

We find Code § 26-3201 (Ga. L. 1969, pp. 857, 867) to have been validly enacted under a proper title, that in

---

[1]Code § 26-3201 (Ga. L. 1969, pp. 857, 867) provides: "A person commits a conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does an overt act to effect the object of the conspiracy. If the crime which was conspired to be committed is a felony, each person convicted of violating this Section shall be punished by imprisonment for not less than one nor more than five years or the punishment provided for such felony, whichever is the lesser. If the crime which was conspired to be committed is a misdemeanor each person convicted of violating this section shall be punished the same as the punishment provided for such misdemeanor." Defendants apparently contend that the first sentence defines the offense, that the second and third sentences prescribe the punishment, and that the first sentence cannot be aided by the latter two sentences.

conjunction with another crime it defines a crime, and that the indictment in this case was sufficient to charge these defendants with that crime. We therefore find Enumerations 3 and 5 to be without merit.

2. Defendants' Enumerations 4, 11 and 12 cite as error the overruling of motions to suppress evidence obtained by electronic surveillance. The motions to suppress were based on the defendants' contentions that (a) Georgia law does not authorize an investigation warrant to issue for the offense of conspiracy; (b) illegally obtained evidence formed the basis of probable cause upon which the investigation warrant was issued; (c) the order authorizing electronic surveillance of defendant Bowen failed to specify a particular description of the type of communication sought to be intercepted; and (d) the order was insufficient on its face because it failed to include the name of defendant Orkin as a known party.

(a) Wiretapping and surveillance are the subjects of federal and state law and both must be complied with where applicable.

The federal statute authorizing wiretapping in certain cases and prescribing the procedure to be followed in order to obtain an interception order is 18 USCA § 2510 et seq., part of the Omnibus Crime Control and Safe Streets Act of 1968. This Act provides that, if authorized by state statute, the principal prosecuting attorney of a state or any political subdivision may make application for a wiretap order and a state judge of general criminal jurisdiction may issue such order complying with federal and state law, "when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping [etc.] . . . or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable state statute . . ., or any conspiracy to commit any of the foregoing offenses." 18 USCA § 2516 (2). Thus the federal statute authorizes the issuance of state wiretap orders for the crime of conspiracy to commit murder by compliance with the requirements of both the federal and state statutes.

Our state statutes on this subject appear in Code Ch. 26-30. Code § 26-3001 prescribes criminal offenses for

eavesdropping, surveillance, and the use of devices to intercept telephone or other private communications. One of the exceptions to Code § 26-3001 is made for law enforcement officers performing official duties; see Code § 26-3004, which was held to be valid in *Granese v. State,* 232 Ga. 193 (1) (206 SE2d 26) (1974). Code § 26-3004 (c) provides that "When there is probable cause to believe that a person . . . is committing or has committed . . . any felony involving bodily harm . . ." the district attorney may apply to the superior court judge for an investigation warrant permitting the use of wiretapping devices.

Defendants argue that conspiracy to commit murder is not a crime within the meaning of Code § 26-3004 (c) because the predecessor of our wiretapping law was enacted in 1967 (Ga. L. 1967, p. 844) when there was no crime of criminal conspiracy, that in 1969 when conspiracy was made a crime it was not added to the offenses specified in Code § 26-3004(c), and moreover, they argue that a mere conspiracy involves no bodily harm. In substance, defendants thus argue that the General Assembly did not intend that conspiracy be a wiretappable offense. We disagree because the General Assembly used the words "any felony involving bodily harm," and the words "bodily harm" would include murder, rape, battery, etc. We find that by the use of those words, the General Assembly intended to include "any felony involving bodily harm" and we find further that conspiracy to commit murder, although subsequently enacted, is a felony involving bodily harm within the meaning of Code § 26-3004(c) for which an investigation warrant may issue.

(b) Defendants next contend that the investigation warrant was issued on a finding of probable cause based on illegally obtained evidence and that the warrant was therefore illegal.

Testimony at the hearing on the motions to suppress evidence reveals that defendant Bowen approached Detective C. E. Landrum of the Atlanta Police Department, a friend of Bowen's, on May 13, 1974, with an offer to pay $5,000 or more in cash if Landrum would kill an unnamed person who was "giving some trouble" to an "old friend" of Bowen's, or $1,000 if Landrum would

help Bowen contact a hired killer. Bowen called Landrum several times in the next few days in order to persuade him to assist in securing a killer. Landrum pretended to go along, but went to the district attorney's office to get advice on what action to take to avert the intended crime.

A meeting was first arranged by Landrum between Bowen and a so-called "hit man" who told Bowen that he would not do it himself but that he had an out-of-town friend who would. Bowen voluntarily offered this man $2,500, which he refused.

Arrangements were then made in phone conversations between Bowen and Landrum for Bowen to meet the second "hit man" at an airport motel upon the transmission of a prearranged signal. It was agreed that Landrum would convey the signal and Bowen's number to the "hit man" and then cease to act as a middle man. Landrum recorded these telephone conversations with a cassette attached to his own phone, without having obtained an investigation warrant.

Mr. Rex Armistead, an investigator for the Mississippi Attorney General's office, was enlisted to pose as the hired killer. Armistead contacted Bowen by telephone on June 18, 1974, utilizing the prearranged code, and a meeting was arranged. Bowen met Armistead at an Atlanta motel that night and the contract to kill Gerald Johnson was discussed. Bowen gave Armistead details of the intended victim's daily routine, advised Armistead that he wished the killing to look like a mugging, and gave Armistead $5,000. At a second meeting on June 19, Bowen paid an additional $2,500 to Armistead and gave him a sawed-off shotgun and four live shells. During these meetings, Bowen alluded to the fact that he was' acting for another and mentioned the name Orkin several times. Armistead thereafter referred to Orkin in his dealings with Bowen. The last conversation between Bowen and Armistead occurred by telephone on June 20. These four conversations, two by telephone and two in person, were recorded with Armistead's permission. None of these recordings was authorized by an investigation warrant.

On the afternoon of June 20, a written application, under oath, was made by the district attorney setting

forth the facts discovered from the taped conversations as constituting probable cause to issue a wiretap order, and the order was signed by a judge of Fulton Superior Court. Defendants contend that the recorded conversations between Bowen and Landrum and Bowen and Armistead were illegally obtained and, therefore, cannot be a valid basis for finding probable cause to issue the warrant.

In each case Bowen voluntarily engaged in communications with persons who were parties to the conversations and who gave their permission to have the conversations recorded. Both the federal and the Georgia statutes have provisions authorizing electronic surveillance in certain situations when one party to the communication consents.

The federal law, 18 USCA § 2511 (2) (c), provides: "It shall not be unlawful . . . for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

Code § 26-3006 provides: "Nothing in section 26-3001 shall prohibit the interception, recording and divulging of a message sent by telephone, telegraph, letter or any other means of communication . . . in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent."

It should be kept in mind that some of the taped conversations with Bowen were the result of wiretaps and others resulted from his meetings with Armistead, which Armistead consented to have recorded. The one party consent provision of Code § 26-3006 is applicable to face-to-face oral communications. *Humphrey v. State,* 231 Ga. 855, 862 (204 SE2d 603) (1974), cert. den. 419 U. S. 839 (1975).

Defendants rely on *Farmer v. State,* 228 Ga. 225 (184 SE2d 647) (1971), and urge that, according to *Farmer,* although the tapping of a criminal telephone conversation where one party consents is not illegal under state law, it nevertheless violates the Fourth Amendment

and hence is inadmissible as evidence. *Farmer* followed Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967).

In Katz, supra, federal agents attached an electronic listening and recording device to the outside of a public telephone booth and recorded petitioner's part of his conversation. The court said: "The Government's activities in electronically listening to and recording petitioner's words violated the privacy upon which he justifiably relied in using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." 389 U. S. 353. The court went on to say that a warrant would be required for such surveillance. The Omnibus Crime Control and Safe Streets Act of 1968, with its exception of consent (18 USCA § 2511 (2) (c), supra), was enacted after the decision in Katz.

In United States v. White, 401 U. S. 745 (91 SC 1122, 28 LE2d 453) (1971), the Supreme Court upheld the use of evidence obtained by government agents transmitted to them by a concealed radio carried by an informer during meetings with the defendant. There the court distinguished Katz on the ground that although Katz was justified in his expectations of privacy, White was not justified in confiding in an informer. The court held that since the informer could testify as to what White had said, the more reliable recordings of those conversations were admissible. The court went on to note that its opinion was shared by Congress as shown by passage of the Omnibus Crime Control and Safe Streets Act of 1968 and the ABA Standards for Criminal Justice, Electronic Surveillance § 4.1 (which section approves the use of electronic surveillance techniques by law enforcement officers for overhearing or recording wire or oral communications with the consent of one of the parties).

We believe that the possible scope of Katz, supra, was limited by White.[2] Thus, when Bowen spoke by phone

---

[2]Because United States v. White, supra, is more recent than Katz v. United States, and because a state is without authority to impose federal constitutional restrictions on police activity when the United States Supreme Court refrains from imposing them, Oregon v.

with Landrum and with Armistead he was not justified in his expectations of privacy. The recordings of those conversations were not obtained illegally and were admissible into evidence. Whether the conversation be face-to-face, or via telephone, Bowen's expectations of privacy were the same. Bowen has no Fourth Amendment right to silence Landrum and Armistead or to exclude recordings of conversations he had with them and which they could relate in their testimony.

Thus under both federal and state law, the recordings of the conversations Bowen had with Landrum and Armistead were lawfully obtained. Those recordings therefore validly supported a finding of probable cause to issue the investigation warrant and were admissible in evidence at the trial of this case.

(c) The defendants urge as further grounds for suppression of the wiretap evidence that the warrant failed to specify a particular description of the type of communication sought to be intercepted.

As heretofore noted, the requirements of both federal and state law regarding wiretapping must be satisfied where applicable.

18 USCA § 2518 (4) (c) requires that the state order give, among other things, "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates." Defendants contend that the warrant in this case failed to satisfy the first of these two requirements.

In United States v. Tortorello, 480 F2d 764, 779 (2d Cir. 1973), cert. denied 414 U. S. 866, the court examined the degree of particularity contemplated by Congress in the enactment of this provision, noting that it undoubtedly was prompted by Fourth Amendment decisions of the United States Supreme Court. That court reasoned as follows: One purpose of the provision is the prevention of surveillance of persons suspected of being engaged in criminal activity in the hope of obtaining evidence of some unspecified crime (i.e., "finding out what

Hass, 43 LW 4417, 4418 (1975) we find that our decision in *Farmer v. State,* supra, is now controlled by White rather than Katz.

they are up to"); a pragmatic approach to the degree of particularity required would demand a statement of the crime being investigated and the type of anticipated conversations, but not the anticipated actual content of such conversations; the order must be broad enough to allow interception of any statements concerning the specified crime; and, in reviewing the sufficiency of the description in the order, the application and affidavits may be considered together with the order.

Insofar as the description of the type of communication to be intercepted in this case is concerned, the warrant issued by the superior court judge specified the crimes (murder and conspiracy to commit same), authorized surveillance of Bowen relative to the enumerated offenses, specified that a wiretap could be placed on a certain telephone number utilized by Bowen, prohibited interception or recording of any conversations except those authorized, and incorporated the application and supporting affidavit by reference. The application specified as the conversations to be overheard and recorded those conversations between Bowen and other unknown persons relating to the commission of the named crimes. The affidavit, insofar as pertinent to this point, named the intended murder victim and stated that Bowen had indicated that he was acting for others, one of whom was out of this state, and that Bowen had stated he was in telephonic communication with such person.

We find that the warrant and incorporated supporting documents meet the specificity requirement as to the type of communication to be intercepted.

(d) The defendants' final contention regarding the wiretap is the failure of the warrant to include the name of William Orkin as a known party to the conspiracy. The application and order authorized surveillance of Bowen and "other unknown persons." The defendants argue that this language failed to comply with the requirements of 18 USCA §§ 2518 (1) (b) (iv) and 2518 (4) (a), in that Orkin was a known conspirator within the meaning of those provisions.

Those sections require, in pertinent part, that the application (18 USCA § 2518(1) (b) (iv)) and order (18 USCA § 2518 (4) (a)) shall contain "the identity of the

person, if known," committing the offense and whose communications are to be intercepted. These provisions have been interpreted by the United States Supreme Court and the Courts of Appeals of various circuits to mean that a person must be named in an application and order authorizing electronic surveillance where there is probable cause to believe that that person has committed or is committing the offense to be investigated and would be using the telephone to be monitored. United States v. Kahn, 415 U. S. 143, 155 (94 SC 977, 39 LE2d 225) (1974); United States v. Martinez, 498 F2d 464 (8) (6th Cir. 1974); United States v. Bernstein, 509 F2d 996 (4th Cir. 1975); United States v. Donovan, 513 F2d 337 (6th Cir. 1975); United States v. Moore, 513 F2d 485 (D. C. Cir. 1975). This probable cause standard does not require that the government attempt to discover whether probable cause might exist to name an individual. Kahn, supra. Where probable cause does exist to believe that a person is both involved in the illegal activity and likely to use the monitored facility, he must be named in the application and order for the evidence obtained to be used against him. Bernstein, supra; Moore, supra.

The responsibility for determining whether probable cause exists to name an individual as a known party in a surveillance warrant rests upon the judge issuing the order. 18 USCA § 2518 (3). As in the determination of probable cause in other situations, the exercise of the judge's discretion will receive great deference from the reviewing courts. Spinelli v. United States, 393 U. S. 410, 419 (89 SC 584, 21 LE2d 637) (1969); United States v. Melancon, 462 F2d 82(5) (5th Cir. 1972).

Testimony at the hearing on the motion to suppress shows that information as to Orkin's possible involvement was submitted to the district attorney, and that the court heard sworn testimony concerning this information at the time the application was presented. Where the judge is fully advised in sworn testimony of the identity of a person not named in an application but whose complicity is suspected, the prosecuting attorney has fulfilled the requirements of 18 USCA § 2518 (1) (b) (iv). See Moore, supra, p. 496, n. 31. Thus, in the case before us, unlike the cited cases, the district attorney presented the

evidence to the court and the court made the probable cause determination as to Orkin being a known conspirator. That determination is entitled to deference upon review.

The defendants contend that Orkin was a known person by citing the fact that Orkin's name was mentioned as being connected with the conspiracy during several conversations between Bowen and Armistead prior to the application for the wiretap order. The judge had knowledge of these facts. Orkin was never implicated by anyone other than Bowen himself. In United States v. Bernstein, supra, informants proven to be reliable implicated Bernstein, who was reputedly involved in gambling. Bowen's reliability was unproven and he was making serious allegations of unusual criminal activity against a man of good reputation in the community. Although Bowen admittedly was a participant in the conspiracy, and thus was not an informant in the usual sense, still his statements to Armistead regarding Orkin were unverified. Defendants urge that if the officers could not rely on Bowen's statement's involving Orkin, then they could not rely on Bowen's statements regarding the proposed murder, and thus there was no probable cause to believe Bowen was engaged in activity which would support the issuance of the investigation warrant. They contend that the state cannot rely on Bowen's statements implicating himself as showing probable cause for the issuance of the warrant and at the same time reject Bowen's statements implicating Orkin as showing probable cause that Orkin was a known conspirator. This argument overlooks the fundamental difference between a self-incriminating statement and a statement incriminating a third person; the former is more reliable than the latter.

Defendants also point to the fact that Bowen was known to be employed by Orkin and to reside on Orkin's property. However, Bowen's reliability as to whether probable cause existed as to Orkin is not to be determined by the employer-employee relationship. Although the officers had reason to suspect Orkin, we cannot say that the trial judge erred in finding that Bowen's unverified allegations were insufficient to establish probable cause

as to Orkin. In reaching this conclusion we have asked ourselves this question: Would the evidence presented to the trial judge have authorized a tap on Orkin's telephone? In view of the closeness of that question, we find that the judge issuing the order did not err in his determination that Orkin was not a known conspirator within the meaning of § 2518 (1) (b) and (4) (a).

We find these enumerations to be without merit.

3. In Enumeration 12 defendants appeal the admission into evidence of state's exhibit 13, a cassette tape obtained pursuant to the electronic surveillance order, on the grounds that publication of the contents of this recording prior to trial rendered the tape inadmissible as evidence.

Code Ann. § 26-3004 (k) provides: "Any publication of the information or evidence obtained under a warrant issued hereunder other than that necessary and essential to the preparation of and actual prosecution for the crime specified in the warrant shall be an unlawful invasion of privacy under this Chapter, and shall cause such evidence and information to be inadmissible in any criminal prosecution." The defendants contend that publication of the contents of exhibit 13 on two separate occasions prior to trial was not a necessary and essential publication and therefore violated the requirement of § 26-3004(k). On September 18, 1975, Detective Matthews played several brief excerpts of portions of the tape believed to be the voice of William Orkin to Mr. and Mrs. Gerald Johnson, the intended victim and his wife, for voice identification purposes. On September 20 portions of a copy of exhibit 13 were played in the courtroom in order to test amplification equipment for audibility. The persons present were all staff members in the district attorney's office.

Code Ann. § 26-3004(k) has not been interpreted by the appellate courts of this state, thus the definition of what constitutes a "necessary and essential" publication is a matter of first impression. Nor is there an exact equivalent of the Georgia statute on the federal level, although 18 USCA § 2517 prescribes the situations in which intercepted communications may be used. It is clear from the unequivocal language of § 26-3004(k) that the legislature intended to place strict limitations on the

publication and use of evidence obtained through electronic surveillance, restricting use to those situations "necessary and essential to the preparation of an actual prosecution for the crime." The question at bar is whether the two publications complained of were necessary and essential within the meaning of the Code section.

We cannot agree with the interpretation impliedly urged by the defendants that "necessary *and* essential" means "indispensable," i.e., only those publications so fundamentally required for criminal prosecutions that they cannot be avoided. Nor do we adopt the view that the state has unlimited discretion to use the recordings for any purpose arguably connected with trial preparation. The better view of the legislative intent involves a balancing of the opposing interests involved. It is unreasonable to believe that the legislature intended to allow for authorization of electronic surveillance in the investigation of criminal activity only to remove the ability to use the results of such surveillance in all but the most fundamental portions of trial preparation. Each case varies and the preparation necessary for each case varies. On the other hand, it would clearly defeat the purpose of protection of the private citizen to allow the issue of what is necessary and essential to be determined solely by the subjective beliefs of the prosecuting attorneys. The construction to be given the statute is rather what is reasonably necessary and essential to the preparation of and actual prosecution for a crime. What is reasonable will depend upon the facts of a given case and must necessarily rest in the controlled discretion of the district attorney, subject to review by the trial court. Where there is evidence to support the decision of a trial judge on motion to suppress evidence, that decision will not be disturbed on appeal. *State v. Swift,* 232 Ga. 535 (1) (207 SE2d 459) (1974); *Wilson v. Hopper,* 234 Ga. 859, 863 (218 SE2d 573) (1975).

In the case at bar, the trial judge reached the conclusion that the recording which constitutes state's exhibit 13 was admissible; i.e., was not published unnecessarily in violation of § 26-3004 (k). We review that determination in light of the standard set forth above. On September 20, portions of the tape were played in the

courtroom by members of the district attorney's office to test for audibility. The facts authorized the judge to conclude that only brief portions of the tape were played and all persons present were members of the district attorney's staff who had been present earlier when the tape was played at the hearing on the motion to suppress. Adequate precautions were taken to secure the courtroom, and the tape was turned off on the two occasions that a sheriff opened a door into the courtroom. The trial judge did not err in determining that this publication was reasonably necessary.

The facts authorized the judge to find that on September 18 Detective Matthews played several brief excerpts of sentences on the tape believed to be the voice of Orkin to Mr. and Mrs. Gerald Johnson, the intended victim and his wife, Orkin's former secretary. This publication took place in a locked office and was a very limited publication for voice identification purposes. Mrs. Johnson was called as a witness for the state. Mr. Johnson, the intended victim, did not testify at the trial. He was, however, listed as a possible witness for the state. We conclude that the circumstances surrounding the two publications authorized the trial judge's finding that they were reasonably necessary and essential in preparation for prosecution of the crime. We therefore find no merit in this enumeration.

4. In Enumeration 9 Orkin appeals the overruling of his motion to quash the indictment on the grounds that (a) the grand jury was illegally impaneled due to the systematic exclusion of citizens of Fulton County between the ages of 18 and 21; (b) the Act providing for selection of the grand jury (Code Ann. § 59-201) is unconstitutional because of the exclusion of citizens between the ages of 18 and 21; (c) the indictment was illegal due to the systematic exclusion of young adults under the age of 30, resulting in a disparity of 4 to 1 between the number of adults 18 to 30 in the grand jury pool and in the community at large; and (d) the statutes affording to public officials the right to appear before the grand jury prior to the return of an indictment against them, Code Ann. §§ 40-1617 and 89-9908, violate his right to the equal protection of the laws and thus render the

indictment void.

The 14th and 6th Amendments to the U. S. Constitution require that a state not deliberately and systematically exclude an identifiable and distinct group from jury lists, as an accused is entitled to a jury drawn from a fair and representative cross-section of the community. Taylor v. Louisiana, 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975); Peters v. Kiff, 407 U. S. 493 (92 SC 2163, 33 LE2d 83) (1972); Alexander v. Louisiana, 405 U. S. 625, 628 (92 SC 1221, 31 LE2d 536) (1972); Swain v. Alabama, 380 U. S. 202, 208 (85 SC 824, 13 LE2d 759) (1965); Hernandez v. Texas, 347 U. S. 475, 478 (74 SC 667, 98 LE 866) (1954). The states are free to prescribe relevant qualifications for jurors within this basic requirement. Taylor, supra, 701.

The burden is upon the defendant challenging the array of a jury to establish a prima facie case that there has been systematic exclusion of a distinct class of citizens. Whitus v. Georgia, 385 U. S. 545, 550 (87 SC 643, 17 LE2d 599) (1967). In order to show systematic exclusion, the defendant must demonstrate sufficiently to establish a prima facie case that (1) the sources from which the jury list was drawn are tainted in that they provide the opportunity for discrimination, and (2) that use of these sources resulted in a substantial disparity between the percentages of the separate class on the jury list and in the population as a whole. Whitus, supra; Foster v. Sparks, 506 F2d 805(4) (5th Cir. 1975); *Pass v. Caldwell,* 231 Ga. 192 (200 SE2d 720) (1973). Implicit in these requirements is that the defendant has the burden of showing that the group he seeks to prove has been systematically excluded constitutes a distinct and separate class of citizens. Hernandez, supra, p. 478; *State v. Gould,* 232 Ga. 844 (2) (209 SE2d 312) (1974).

Code Ann. § 59-106 provides that the jury commissioners shall select as grand jurors the "most experienced, intelligent, and upright citizens." The statute was upheld in Turner v. Fouche, 396 U. S. 346 (90 SC 532, 24 LE2d 567) (1970), as not being violative of the U. S. Constitution. Code Ann. § 59-201 provides that grand jurors shall be 21 years of age. That is not an invalid qualification in light of the requirement that grand jurors

be experienced. The Age of Majority Act had no effect on the legitimacy of this requirement. *Estes v. State,* 232 Ga. 703 (2) (208 SE2d 806) (1974); *State v. Gould,* supra, p. 845. Grounds (a) and (b) of the motion to quash are without merit.

This court has previously overruled a challenge to the constitutionality of this method of jury selection against a charge of exclusion of young adults from 18 to 30. *White v. State,* 230 Ga. 327 (1) (196 SE2d 849) (1973). The defendants have failed to show that the age group 18 to 30 constitutes a significantly identifiable separate group subject to discrimination and systematic exclusion. Hernandez, supra, p. 478; *Gould,* supra, p. 845. Ground (c) of the motion is without merit.

Code Ann. §§ 40-1617 and 89-9908 provide that certain public officials accused of misfeasance, malfeasance or malpractice in office shall have the right to appear before the grand jury prior to the return of any indictment against them on such charges. Orkin seeks to challenge these statutes on constitutional grounds as a denial of equal protection. It should be noted that Orkin has not demonstrated any harm to himself due to this statute which would give rise to standing to challenge the statute, (*Bryant v. Prior Tire Co.,* 230 Ga. 137 (196 SE2d 14)(1972)); that is to say, the crime charged against Orkin is in no way similar to any crime for which a public officer would be entitled to appear before a grand jury. On the merits, the statutes do not violate Orkin's rights under either the equal protection clause of the United States Constitution or that provision of our Constitution (Code Ann. § 2-102) which provides for equal protection of citizens of this state. The statutes are narrowly drawn, relate only to misconduct in public office, and constitute a justifiable classification vis-a-vis the crime of conspiracy to commit murder. *Baugh v. City of LaGrange,* 161 Ga. 80 (2a) (130 SE 69) (1925); *Ledger-Enquirer Co. v. Brown,* 213 Ga. 538, 540 (100 SE2d 166) (1957); *Clinkscales v. State,* 102 Ga. App. 670, 674 (117 SE2d 229) (1960).

We find Enumeration 9 to be without merit.

5. Enumerations 6 and 8 appeal the overruling of motions for change of venue and for continuance. The defendants argue that the publicity surrounding the trial

was such that the trial court abused its discretion in the denial of these motions.

There is no evidence in the record of the hearing on these motions that the trial judge abused his discretion in denying defendants' motions. Rather it appears that the judge exercised great caution in his examination of the evidence in consideration of the motions and in the measures taken to maintain an objective and un-prejudiced atmosphere during the pretrial and, trial proceedings. *Chenault v. State,* 234 Ga. 216 (4, 5) (215 SE2d 223) (1975). These enumerations therefore do not constitute grounds for reversal.

6. Enumeration 7 appeals the overruling of Orkin's motion for severance. Orkin contends that he was entitled as a matter of law to a severance because (1) overt acts were alleged to have been committed only by Bowen, and it was impossible to keep that evidence separate from the evidence against Orkin in a joint trial; and (2) in a separate trial Orkin would have been able to cross examine Bowen. Orkin contends that this joint trial was particularly harmful due to the lack of an instruction to the jury on the prima facie showing of conspiracy required before consideration of declarations of a co-defendant (see Division 12 of this opinion).

As discussed in Division 7, infra, both the acts and statements of a conspirator in furtherance of the general criminal scheme are admissible into evidence against all other conspirators. Code Ann. § 38-306; Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970); *Lindsey v. State,* 227 Ga. 48 (3) (178 SE2d 848) (1970). The evidence of overt acts and statements by Bowen in furtherance of the conspiracy was equally admissible against Orkin, and he therefore was not denied any right to separation of evidence by the joint trial. Furthermore, the instructions on proof of conspiracy were correct and complete (see Division 12).

Code Ann. § 27-2101 provides that the question of whether defendants jointly indicted shall be tried separately or together lies within the discretion of the trial court in noncapital cases. In challenging the denial of a motion to sever, an appellant must show an abuse of the court's discretion to obtain a reversal. Opper v. United

194

States, 348 U. S. 84 (3).(75 SC 158, 99 LE 101) (1954); United States v. Clark, 480 F2d 1249, 1252 (5th Cir. 1973); *Cain v. State,* 235 Ga. 128 (218 SE2d 856) (1975). Orkin has shown no abuse of discretion.

Enumeration 7 provides no grounds for reversal.

7. Enumerations 26 and 27 appeal the admission into evidence over objection of the testimony of Matthews and Armistead concerning Bowen's declarations implicating Orkin. The defendants contend that this was a denial of Orkin's right to confrontation and cross examination as guaranteed by the 6th Amendment to the United States Constitution.

The United States Supreme Court cases cited by the defendants all deal with the situation where the confession of a co-defendant implicating the defendant was admitted as evidence in the trial of the implicated defendant. Douglas v. Alabama, 380 U. S. 415 (85 SC 1074, 13 LE2d 934) (1965); Barber v. Page, 390 U. S. 719 (88 SC 1318, 20 LE2d 255) (1968); Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968); Roberts v. Russell, 392 U. S. 293 (88 SC 1921, 20 LE2d 1100) (1968). In those cases, the defendant making the confession did not testify. It was thus a denial of the joint defendant's right of cross examination of witnesses to allow admission of those confessions.

None of those cases apply to the situation here, where the evidence sought to be excluded was testimony by investigating officers as to the statements made to them by a conspirator in furtherance of the conspiracy, and where there is independent evidence both as to the existence of a conspiracy and the involvement of the defendant therein. The testimony objected to was testimony by Armistead as to statements made by Bowen in furtherance of the conspiracy, not as a confession, and testimony by Matthews as to the content of the tapes of Bowen's intercepted conversations. This testimony fits squarely into Code Ann. § 38-306, which provides that, after a conspiracy is proved, the declarations of any conspirator during the pendency of the criminal project are admissible against all. Dutton v. Evans, 400 U. S. 74, supra; *Lindsey v. State,* 227 Ga. 48, supra. We therefore find Enumerations 26 and 27 to be without merit.

8. Enumerations 1, 2 and 10 deal with the issue of whether defendant Bowen was entrapped as a matter of law by state officers into committing overt acts in furtherance of the conspiracy. Based on this ground, Enumeration 1 appeals the denial of a motion for directed verdict at the close of state's evidence, Enumeration 2 appeals the denial of a motion for directed verdict at the close of all the evidence, and Enumeration 10 appeals the denial of a motion for a directed verdict on the grounds that the evidence as a whole showed that defendant Bowen was entrapped as a matter of law. Looking at the evidence as a whole, the facts do not support the defendants' contentions. See *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975).

"Entrapment exists where the idea and the intention to commit the act originate with a police officer, who, by undue persuasion and deceitful means, induces the defendant to violate the law. But there is no entrapment where the officer merely furnishes an opportunity to a defendant who is ready to commit the offense." *Hill v. State,* 225 Ga. 117, 119 (166 SE2d 338) (1969).

The facts show that on his own initiative Bowen approached a member of the Atlanta Police Department in order to secure a "hit man," that Bowen called this person on several occasions to urge him to help in this matter, that Bowen voluntarily offered $2,500 to the first "hit man" he was put in touch with, and that at Armistead's request Bowen voluntarily provided Armistead with $5,000 at the first meeting and with $2,500 and a sawed-off shotgun at the second meeting. These facts constitute sufficient evidence of overt acts to authorize submission of the evidence to the jury. There is no evidence that Bowen ever intended to withdraw from the conspiracy.

It does not constitute entrapment where a defendant approaches a police officer with an offer to commit a crime, if that officer then plays a role in order to provide the defendant with an opportunity to commit the intended offense. Lopez v. United States, 373 U. S. 427 (83 SC 1381, 10 LE2d 462) (1963). The facts in the case relied upon by defendants, *Jones v. State,* 101 Ga. App. 851 (4) (115 SE2d 576) (1960), are entirely different from the facts of this

case.

We find no entrapment as a matter of law. The judge's charge to the jury instructed them on the law of entrapment and that the burden of proof was on the state to negative the defense of entrapment beyond a reasonable doubt. This charge was complete and the jury was authorized to find that there was no entrapment.

We find no merit in these enumerations.

9. Defendants' Enumerations 13, 14 and 16 appeal the failure of the court to give defendants' request to charge relating to the law of entrapment. Enumeration 23 appeals the charge on entrapment as given by the court.

Defendants contend that the charge given regarding entrapment was erroneous. That instruction was virtually identical to the suggested charge on entrapment (long form) prepared by the Council of Superior Court Judges. We find that the charge given on entrapment was correct.

It apparently is defendants' contention that the use of undercover agents is deceitful within the meaning of entrapment and that where an undercover agent induces the accused to commit an overt act, the accused has been entrapped. This contention overlooks that part of the definition of entrapment that the idea to commit the act must originate with the police officer and that the accused would not have committed the act except for the conduct of the police officer. *Hill v. State,* 225 Ga. 117, supra.

The charges requested by Orkin and Bowen were that there is an entrapment as a matter of law where only the predisposition to crime exists but the state, by deceit, procures the commission of the overt acts. Orkin's other request would have charged the jury that an overt act induced by a government officer by threats of eminent death or great bodily harm should be disregarded (defendants urge that Bowen was intimidated by Armistead, disguised as a tough, underworld "hit man," to commit the three overt acts charged. Cf. Code § 26-906). The charge given adequately covered the law of entrapment and it was not error to refuse to give the charges as requested. *Teal v. State,* 234 Ga. 159 (3) (214 SE2d 888) (1975), and cits.

10. Enumeration 18 appeals the failure to give

Orkin's request to charge that the jury would be authorized to consider whatever the evidence shows as to artifice, design, or fraud in determining the credibility of a witness. Enumerations 20 and 21 contend that the charge given regarding the credibility of witnesses and conflicts in evidence intruded upon the province of the jury and was an expression of opinion by the court.

The court charged on credibility of witnesses and reconciling conflicts using substantially the language of instruction No. 50, "Witnesses, Credibility of (optional form 2)," contained in the book of criminal charges prepared by the Council of Superior Court Judges. The charge is correct. It was not error to fail to charge in the exact language requested. *Teal v. State,* 234 Ga. 159, supra.

We find Enumerations 18, 20 and 21 to be without merit.

11. Enumeration 19 contends that the court erred in its charge to the jury on what constitutes reasonable doubt in that the charge did not instruct that conflicts in evidence were matters to be considered in determining whether a reasonable doubt exists. The court charged the jury as to conflicts in the evidence and as to reasonable doubt, but did not charge the former in conjunction with the latter. However, the charge given on reasonable doubt was adequate. *White v. State,* 129 Ga. App. 353 (2) (199 SE2d 624) (1973).

12. Enumerations 15, 22, 24 and 25 all relate to the charge on the law of conspiracy. Defendants contend in Enumeration 22 that the court erred in charging the jury that a conspiracy is a combination or agreement between two or more persons to do an unlawful act or acts. They argue that this charge was error because the act allegedly contemplated by them is not a crime. This contention is without merit because, as discussed in Division 1 of this opinion, conspiracy to commit murder is an unlawful act, and thus the charge was correct. *Caldwell v. State,* 227 Ga. 703, 706 (182 SE2d 789) (1971).

Enumeration 24 contends that the court erred in failing to charge, without request, on the principle of withdrawal from a conspiracy. The defendants argue that the testimony of Armistead as to a conversation had with

Bowen on the subject of securing an additional $5,000 from Orkin and the testimony of Orkin as to his conversations with Bowen support the view that Orkin attempted to withdraw from the conspiracy. On cross examination of Armistead, defense counsel sought to elicit evidence that Bowen had said that Orkin would not go further. However, it is clear that these comments by Bowen were Orkin's response to the demand for additional money and do not constitute evidence of withdrawal from the conspiracy.

Orkin's contention, as revealed in his testimony, was that he was never a conspirator in the crime, not that he withdrew his original intention. A charge on withdrawal was not demanded by the evidence.

Enumeration 25 contends that the court erred in failing to charge, without request, that before a jury might be authorized to consider as evidence against one conspirator the declarations of another, they must first find prima facie that a conspiracy existed. Because the crime charged was conspiracy, the court charged that the jury must find that a conspiracy existed beyond a reasonable doubt. The court thus did not err in failing to charge that the jury must first find prima facie that a conspiracy existed before considering declarations of conspirators.

Enumeration 15 appeals the failure of the court to charge, as requested by Orkin, that, if the jury found overt acts to have been committed by Bowen prior to the formation of a conspiracy, both defendants should be acquitted. This request to charge was erroneous as a matter of law (*Daniels v. State,* 58 Ga. App. 599 (4) (199 SE 572)(1938)), and the court did not err in refusing to give it.

We find no merit in Enumerations 15, 22, 24 and 25.

13. Enumeration 17 appeals the failure of the court to charge, as requested by Orkin, that there can be no murder without malice and no malice without motive. The court did not err in denying this request to charge because the charge given was full, correct and complete as to malice and intent to kill.

The numerous enumerations of error being without merit, the judgment of the trial court is affirmed.

*Judgment affirmed. All the Justices concur, except*

*Nichols, C. J., and Ingram, J., who dissent from the ruling on Enumeration No. 25 only and from the judgment.*

ARGUED SEPTEMBER 4, 1975 — DECIDED JANUARY 27, 1976 —
REHEARING DENIED FEBRUARY 11, 1976.

*Durwood T. Pye, D. Thomas Pye, III, Lewis M. Groover, Jr., Charlie Parker, Jr., Charles L. Weltner, Wesley R. Asinof,* for appellants.

*Lewis R. Slaton, District Attorney, Carter Goode, Assistant District Attorney, Arthur K. Bolton, Attorney General,* for appellee.