### 32684. BURNETT v. THE STATE.

BOWLES, Justice.

This appeal is from the conviction of Billy J. Burnett for the offense of murder. He was indicted in Hall Superior Court along with Larry Looney and Coy Michael Sullens for the malice murder of Colie Bowen. All defendants were tried separately, and we have previously affirmed the convictions of the co-defendants. *Looney v. State,* 240 Ga. 691 (1978); *Sullens v. State,* 239 Ga. 766 (236 SE2d 864) (1977).

## Statement of Facts

On September 1, 1976, the body of a man identified as Colie Bowen was found in a wooded area off a dirt road in Hall County, Georgia. The deceased was 61 years of age and had been employed by the defendant's father, J. C. Burnett, as a pulpwood cutter. The victim had six bullet wounds in his face and head, and three other wounds in the shoulder and hand. The examining pathologist testified that the victim was shot between six and ten times. There was powder tatooing around the wound under the left eye indicating that the gun's muzzle had been fired less than three inches away.

At the trial of appellant, Hoyt Sullens, the father of co-defendant Mike Sullens and father-in-law of co-defendant Larry Looney, testified that he had loaned his station wagon to Looney the evening of August 31. Appellant Burnett left the witness' trailer with Looney and Mike Sullens about 6 or 7 p. m. in the station wagon and returned an hour later.

Cathy Looney, wife of co-defendant Looney and sister of co-defendant Sullens, testified that when Burnett, Looney and Mike Sullens returned that evening to the trailer, Burnett told her he had "put the pedal to the metal" and killed "the old man." Cathy Looney and her two small children then got into the car with the three defendants and drove to Burnett's home where they told his mother about the murder. When the mother replied she did not believe it because it was too good to be true, appellant insisted upon showing her the body. Appellant Burnett, Looney, Mike Sullens, Cathy Looney, and appellant's sister and brother then drove to the location where they viewed Bowen's body lying on its right side. While in the car Mrs. Looney asked where the gun was, and one of the three men told her it was in the lake.

Freddie Joe Cristy testified that while he was riding with appellant and Looney on September 1, 1976, he asked if they had heard about Bowen's murder. Appellant and Looney replied that they knew what had happened and proceeded to tell Christy that Bowen was drunk and had called appellant names. Further, the victim approached appellant to commit an unnatural sex act

which appellant refused to do. Upon the victim continuing to make sexual requests of appellant the latter got a pistol from the car and shot him. Sullens told Christy the gun was in the lake.

A Jackson-Denno hearing was held during the trial, at the conclusion of which the court ruled that two statements made by appellant to Detective Tony Carter on September 2, 1976, were admissible in evidence. Detective Carter also took a statement from appellant on September 2, 1976, in which appellant denied knowing anything about the victim's death. On September 4, 1976, appellant told Carter he had been too drunk to remember if he had been involved in a murder. Also on that date appellant gave a second statement to GBI Agent Walt Stowe, claiming that the three principals were taking the victim to town when Bowen made a sexual remark to Looney. Appellant stated that "they" shot Bowen and that Mike Sullens threw the gun in the lake.

Investigators were directed by Mike Sullen to an area of the lake where he had thrown the gun. The gun was recovered by a diver and found to contain six spent .22 shells. Ballistics tests showed that two bullets removed from the victim's body were definitely fired from the gun and a third bullet was probably fired from the gun.

The defense presented several members of appellant's family to testify in support of appellant's contention that it was Looney who had murdered Bowen. Appellant testified in his own behalf and admitted that he, Looney and Sullens were taking Bowen to town, but placed the actual blame of the killing on Looney. He testified that Sullens later threw the gun into the lake. He testified about their plans to move the body after the shooting. He claimed that Cathy Looney offered him $2,500 to confess to the murder. He denied his statements to Christy and also denied portions of his statement made to Agent Stowe.

Enumerations of Error

Appellant assigned thirteen separate enumerations of error. We will deal with each assignment separately.

1. The trial court did not err in denying appellant's motion for continuance based upon lack of adequate time to prepare a defense and prejudicial pre-trial publicity.

The record indicates that on September 16, 1976 counsel was appointed to represent appellant. The case came on for trial on October 12, 1976, at which time appellant's counsel filed his motion for a continuance. Following his appointment, counsel for appellant had personally attended the co-defendants' trials, and had an opportunity to preview the expected testimony of the state's witnesses against appellant. Notwithstanding, appellant's counsel requested the delay in the proceedings so that he could obtain a copy of the trial transcripts to assist in his representation of appellant.

Such motions for a continuance predicated on the basis that counsel had not had sufficient time to prepare for trial address themselves to the sound discretion of the trial court, and the ruling of the trial judge in denying a motion for a continuance will not be interfered with unless the court has abused its discretion in denying the motion. *Brawner v. State,* 221 Ga. 680 (146 SE2d 737); *Shaw v. State,* 239 Ga. 690 (238 SE2d 434) (1977). See also *Chenault v. State,* 234 Ga. 216, 221 (215 SE2d 223) (1975).

In his motion for continuance appellant also argued that because of certain adverse newspaper articles concerning appellant's trial and his co-defendants' trials a level of local prejudice attached, denying him the right to a fair trial. However, appellant made no showing that a fair and impartial trial could not be obtained in Hall County, nor did he show that the jurors selected had read the inflammatory newspaper articles or that they had formed an opinion as to guilt or innocence of appellant from having read these newspaper articles. Absent such a showing, his motion for continuance for that reason was properly denied. *Krist v. Caldwell,* 230 Ga. 536 (2) (198 SE2d 161) (1973); *Jarrell v. State,* 234 Ga. 410, 416 (216 SE2d 258) (1975); *Dobbs v. State,* 236 Ga. 427, 429 (224 SE2d 3) (1976).

2. Appellant contends that the trial court's refusal to grant appellant's motion for discovery and inspection was error. Counsel for appellant, prior to trial, filed his motion for discovery based upon Brady v. Maryland, 373 U. S. 83, seeking, inter alia, written statements of all persons who had been interviewed by the police in connection with this case. The statement of Cathy Looney, wife of Larry

Looney, a co-defendant, was specifically requested.

Counsel for appellant admits that the state had permitted him to look over the transcribed statement of Cathy Looney which was in the prosecution file. He contends, however, that he should have been provided with a copy of the statement, and that his being able to review the statement in the file does not satisfy the requirements of Brady, supra.

It appears that the tape recording from which Mrs. Looney's statement was taken was made available to appellant's counsel. Further, it appears that the court informed appellant's counsel that during a noon recess, appellant could take the tape and have it transcribed. Appellant did not do this. He did, however, during a noon luncheon recess review the transcribed statement of witness Looney. Appellant's counsel made no request during the trial that he be permitted to use Mrs. Looney's statement for cross examination. Neither did he use a tape recorder made available to him for the purpose of making a tape of the statement and playing it in front of the jury.

A pre-trial Brady motion requires the state to make available for defendant's inspection any material of an exculpatory nature. From the record it appears that the state fully complied with this requirement concerning Cathy Looney's statement. The prosecution made available to the defendant for examination and for copying the exact statement requested. He complains now because the state did not make him a copy. In our opinion, this is not required under the holding in Brady or its progeny. Additionally, the appellant has demonstrated no prejudice to his case. See *Hicks v. State,* 232 Ga. 393, 395 (207 SE2d 30) (1974); *Coachman v. State,* 236 Ga. 473, 475 (224 SE2d 36) (1976). This enumeration is without merit.

3. Two witnesses for the state testified that appellant's in-court appearance differed substantially from his appearance at the time of the murder in that he was no longer wearing a beard and his hair was considerably shorter than it had been. Appellant contends that this testimony was prejudicial to him and tended to place his character into evidence. He cites no authority

except Code Ann. § 38-201, which includes a statement that, "irrelevant matters should be excluded."

There was testimony in this case that the victim had made certain disparaging remarks about the length of appellant's hair. For this reason, evidence regarding his hair at the time of the murder became a pertinent fact in the case. Such testimony was not legally prejudicial to appellant. See *Weaver v. State,* 137 Ga. App. 470 (224 SE2d 110) (1976); *Brown v. State,* 129 Ga. App. 152 (2) (198 SE2d 909) (1973). The identity of the appellant was not an issue in this case and the admission of testimony regarding his appearance at the time of the crime could not have been harmful to him. *Curry v. State,* 233 Ga. 455 (211 SE2d 746) (1975).

4. That appellant had been allegedly threatened by one of his co-defendants between the time of the crime and trial was neither relevant nor material to the issues before the court and the judge did not abuse his discretion in excluding testimony in regard to such an occurrence. *Mathis v. State,* 210 Ga. 408 (2) (80 SE2d 159) (1954). Nor did the judge err in excluding testimony alleging that co-defendant Looney had inflicted a bruise upon appellant's face, absent a proper foundation being laid.

5. Appellant assigns as error the trial court's exclusion of the assistant district attorney's testimony concerning his belief as to the credibility of certain witnesses.

"The expression by a lawyer of his personal opinion as to the justice of a cause, as to the credibility of a witness, . . . is not a proper subject for argument to the trier of fact." Canon VII, Code of Professional Responsibility, E. C.-24. The opinion of counsel as to the credibility of any witness under the circumstances here illustrated would have no probative value. It was not error to exclude the testimony.

6. Appellant assigns as error the trial court's denial of his motion for new trial after state's counsel, in his closing argument, referred to the proceedings of a previous trial.

The trial judge instructed the jury to disregard whatever was testified to in the previous case and admonished the assistant district attorney not to refer to such matters again. This was sufficient to remove the

argument from the jury's consideration and was a sufficient rebuke to the district attorney. *Spell v. State,* 225 Ga. 705 (3) (71 SE2d 285) (1969) and *Miller v. State,* 224 Ga. 627 (6) (163 SE2d 730) (1968); *Street v. State,* 237 Ga. 307, 315 (227 SE2d 750) (1976).

In his brief, appellant also alleges that he was prejudiced by the district attorney's argument to the jury that by having separate trials, the three co-defendants were allowed to accuse one another of the actual commission of the crime. This, appellant contends, is reference to prior trials.

We have carefully examined the testimony in the case and we conclude that this argument was a reasonable deduction from the evidence presented both by the state and from the cross examination of appellant's counsel. It was not error to deny appellant's motion for mistrial.

7. Appellant assigns error on the failure of the court to give a specific charge after timely request. The court did not give the instruction in the language requested, but gave the following charge: "Circumstantial evidence alone will not justify a finding of guilty unless the circumstances are entirely consistent with defendant's guilt, wholly inconsistent with any reasonable theory of defendant's innocence and are so convincing as to exclude a reasonable doubt of defendant's guilt." The trial judge correctly charged the subject matter of the request. It is no longer necessary to give the exact language of a request to charge when the same principles are fairly given to the jury in the general charge of the court. *Herrmann v. State,* 235 Ga. 400 (220 SE2d 2 ) (1975); *Orkin v. State,* 236 Ga. 176, 197 (223 SE2d 61) (1976).

8. Appellant assigns as error the charge of the trial court as follows: "A person also commits the crime of murder when in the commission of a felony he causes the death of another human being irrespective of malice." Appellant asserts there was no evidence presented during the trial of the case which warranted the charge on felony-murder.

It could reasonably be concluded from the evidence presented at the trial that defendant committed the felony of aggravated assault upon the victim prior to his death. Thus, the reference to felony-murder in this

instance was, at most, harmless surplusage, and cannot be said to have caused confusion to the jurors or to constitute reversible error. *Caldwell v. State,* 221 Ga. 764 (2) (147 SE2d 298) (1966).

9. After some deliberation by the jury they returned to the courtroom and requested some explanation of premeditation and asked, "under what circumstances can the defendant be present during the admission [sic] of a crime and be considered either guilty or innocent?" In response to this request the trial court charged on murder, felony-murder and parties to the crime. He also said, "Now your previous question had to do with the definition of murder and you use the word premeditation. You will notice that no such word is contained in the definition of murder under the Georgia law." Appellant contends the court's statement was error.

Premeditation is not a specific element of malice-murder in Georgia. The court was correct in its response to the juror's question. *Caldwell v. State,* supra.

10. After the jury had deliberated for several hours, the jury returned to the courtroom with another request. The trial court complied with the request, and also charged, "If you reach a deadlock to the point where all of you feel that you cannot reach a unanimous verdict in this case then let the bailiff know and he will advise the court ... There is no reason to think that a better jury can be selected in the future to try this case, there is no reason to think that it would be more ably presented for the State or defended for the defendants. . . While the law does not compel or even encourage anyone to surrender honest and sincere convictions if you can unanimously agree upon a verdict that is what the law desires. . . So go back and deliberate further." The above charge was not erroneous. *Ponder v. State,* 229 Ga. 720 (2) (194 SE2d 78) (1972); *Spaulding v. State,* 232 Ga. 411 (207 SE2d 43) (1974); *Watkins v. State,* 237 Ga. 678 (229 SE2d 465) (1976); *Little v. State,* 238 Ga. 122 (231 SE2d 750) (1977).

11. The appellant filed a written motion requesting that the jury be polled. In accordance with such request, the court inquired of each juror, calling him by name. "Was that your verdict?" Upon receiving a favorable response to that question he then asked the jurors

individually, "Is it now your verdict?" Each juror responded yes to each question individually. The foregoing questions meet the minimum requirements of the defendant's right to a poll of the jurors. We find no error. *Whisman v. State,* 221 Ga. 460, 464 (145 SE2d 499) (1965); *Campbell v. State,* 111 Ga. App. 219, 220 (141 SE2d 186) (1965); *Wallace v. State,* 134 Ga. App. 708, 711 (215 SE2d 703) (1975).

12. Appellant urges that the evidence does not support the verdict and judgment, that the same is contrary to law, contrary to the evidence and contrary to the principles of justice and equity. He offers no argument or citation of authority in support of his enumeration and ordinarily we would consider it abandoned under Rule 18(c) of this court. However, we have thoroughly reviewed the record of the case and find sufficient evidence to support the verdict. *Harris v. State,* 234 Ga. 871 (218 SE2d 583) (1975); *Harris v. State,* 236 Ga. 766 (225 SE2d 263) (1976); *Myers v. State,* 236 Ga. 677 (225 SE2d 53) (1976); *Proctor v. State,* 235 Ga. 720 (221 SE2d 556).

13. Appellant complains the jury was not isolated during one of their lunch breaks prior to verdict. The record in the case does not support the claim made, and will not be considered by this court on appeal. There was no error.

*Judgment affirmed. All the Justices concur, except Hall, J., who dissents.*

ARGUED SEPTEMBER 20, 1977 — DECIDED JANUARY 24, 1978 — REHEARING DENIED FEBRUARY 8, 1978.

*W. Allan Myers,* for appellant.

*Jeff C. Wayne, District Attorney, Roland H. Stroberg, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

HALL, Justice, dissenting.

The majority opinion in Division 6 holds that the assistant district attorney's argument, which referred to what another defendant testified to in another trial, was a

reasonable deduction from the evidence. I dissent.

During the state's closing arguments, the following transpired:

"*Assistant District Attorney:* . . . what that did was create three separate trials. What that did was bring Looney in here at the last term of Court and Looney said, Billy Joe Burnett is the one who did the shooting —

"*Defense Counsel:* Your Honor, I'm sorry, I would move for a mistrial at this time by the District Attorney testifying as to what one of the other defendants has testified to previously. This isn't in evidence in this case at all, and I would ask for a mistrial at the present time.

"*The Court:* I will sustain the objection and I'll overrule the Motion for Mistrial and the Jury will disregard whatever was testified to in the previous case, and don't refer to any more testimony of the previous case.

"*Assistant District Attorney:* Yes, sir, I stand rebuked. Ladies and gentlemen of the Jury what that enables them to do is have one of them come in here and point at the other and then the other one come in here and point at the other one. Now —

"*Defense Counsel:* Your Honor, I renew my objection. He's accomplishing the same thing that the Court has just cautioned him about.

"*Assistant District Attorney:* If the Court please, all I'm doing is drawing a logical inference that there are three defendants —

"*The Court:* I'll overrule the objection, the last one."

It should be noted that this was far from a clear case, as was indicated by the inconsistent testimony from the families of Looney and appellant, and the necessity of an Allen type charge to break a jury deadlock. The first remark of the prosecutor was based on testimony which was not in evidence in this case, and which could not have been introduced without calling Looney to testify (which the state chose not to do). The court properly sustained the objection, yet the assistant district attorney continued the same line of argument, which reminded the jury of what he had just stated, and increased its impact. The objection to this argument was overruled.

If the prosecutor had not continued the objectionable line of argument, I would hesitate to find harmful error

given the curative instruction. See *Watkins v. State,* 237 Ga. 678, 682-683 (229 SE2d 465) (1976). But I cannot ignore reality and hold that the curative instruction completely wiped the statement from the minds of the jury. The second statement took on the prejudicial effect of the first since it was so clearly a part of the same line of argument. The prejudicial impact was increased by the repetition, and yet the trial court sanctioned the latter statement rather than rebuking the prosecutor and giving curative instructions, or granting a mistrial, as required by Code Ann. § 81-1009. See *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976); *Mitchum v. State,* 11 Ga. 615 (1852); *Winget v. State,* 138 Ga. App. 433, 436 (226 SE2d 608) (1976). In my opinion, this is reversible error. Id.

The state contends that there was evidence of Looney's testimony admitted at defendant's request. This is not the case — the only reference to Looney's accusation was hearsay testimony by Mrs. Looney (a state's witness in this case) involving an out-of-court statement. By no stretch of the imagination can it be said that this line of argument was a proper deduction from the evidence.

Only three people knew what actually happened. The only one who testified at this trial was appellant. How can it be said that it was harmless error for the state to inform the jury that one of the other individuals with personal knowledge of what actually happened had accused appellant of shooting Bowen?

I respectfully dissent.