## 61618. NASH et al. v. THE STATE.

BIRDSONG, Judge.

Leroy Nash and Leroy Bobby McCrary were convicted of two counts of first degree arson and one count of third degree arson. Nash was sentenced to eight years on the first degree arson counts and three years on the third degree arson, with three years to serve, all sentences to be concurrent. McCrary was sentenced to 12 years to serve on the first degree arson counts, five years on the third degree arson, all sentences to be concurrent.

Although in dispute, the evidence before the jury authorized it to conclude that Nash and McCrary were employees of a manufacturing plant named "Sunnyland." A number of the employees were on strike for approximately eight months. Nash was a "strike captain" and an organizer of the strike of the plant. One of the victims of arson, a Mrs. Dunbar, was also an employee who would not or did not go out on strike. Mrs. Dunbar testified that Nash solicited her support of the strike and when she refused for economic reasons, told her "she would be sorry." The other two arson victims also were non-striking employees of Sunnyland. In the early morning hours of January 9, 1979 (5 a.m.), Mrs. Dunbar observed Nash's car driving on the wrong side of the street in front of her house. A few minutes later,

she saw the car again drive slowly by her house. A police officer on patrol also observed a car driving in the area at about 5:15 or 5:30 a.m.; Mrs. Dunbar identified Nash as being the driver of that car. Nash lived close to Mrs. Dunbar and they were related. She had seen the car many times and clearly recognized a hat that Nash frequently wore. Shortly after seeing Nash drive by the second time, Mrs. Dunbar left her house with her small daughter. Mrs. Dunbar was on her way to work at Sunnyland and she was taking her daughter to a child care location. After Mrs. Dunbar arrived at work she was advised to return home because her house was on fire. There were several children still asleep in the house when she left for work. The oldest child awoke to get ready for school and found the house on fire. She broke out a window and while she suffered a cut hand, all the children managed to escape. The house was largely consumed in the fire. This was at about 5:30 a.m. At the same time and in the same location, another witness (Banks) observed Nash's car. Feeling apprehension that something amiss was occurring, this witness, who was backing out of his driveway on the way to work at Sunnyland, pulled back into his driveway and observed developments. He saw a spontaneous eruption of fires at three different locations, one at Mrs. Dunbar's house, another at the second alleged victim's house, and a third fire in the back of the third victim's pickup truck. He pulled out and followed Nash's vehicle and saw the appellant McCrary run from the area where the truck blazed up. The witness observed all three fires escalate from small fires to larger ones very rapidly. He pulled alongside Nash's car and observed Nash to be the driver. This witness confronted Nash later that morning and in effect agreed with Nash that if Nash would leave the witness' home alone, the witness would not tell the police what he had seen or what he knew. Nash at that time allegedly stated that "they would not have burned the houses if they had known that there was children present." Lastly, the state produced a witness who was granted immunity. This witness testified that he had been present with Nash, McCrary and another in Nash's auto on the morning of the fires. The men had agreed to burn the property of the non-strikers. Three of the men simultaneously got out of Nash's car after they saw Mrs. Dunbar leave her house, and each went to his designated location and set a fire. They then fled the scene but before they could leave, a person (Banks) had driven up to their car, pulled alongside and acted as if he saw at least Nash.

In defense of these charges, Nash and McCrary offered evidence of an alibi, good character and attacked the credibility of Mrs. Dunbar, Banks (who saw the appellants' activities), and that of the accomplice. Appellants bring this appeal enumerating as error the failure of the trial court to charge specifically that evidence of bad

reputation in the community may furnish reasonable grounds of impeachment (as to Mrs. Dunbar); that the trial court did not charge in the language of the request that evidence of good character standing alone may be sufficient to warrant acquittal; by including in its charge on alibi that alibi includes the impossibility of being at the scene of the crime thus tending to shift the burden of proof to appellants; failing to direct a verdict of acquittal at the close of the state's evidence; and on the general grounds. *Held:*

1. The trial court charged extensively upon the issue of credibility of witnesses. As part of that charge, the trial court singled out several factors affecting credibility, including the lack of believability of the witness, the existence of prior inconsistent statements, and the fact that a witness has been convicted of a felony. Mrs. Dunbar's veracity was attacked by having one witness testify that Mrs. Dunbar had a bad reputation in the community and that the witness would not believe Mrs. Dunbar under oath. The accomplice's credibility was attacked by showing prior felony convictions in another state. Another witness (Banks) was attacked by showing he had made prior inconsistent statements. The trial court tailored its charge to single out individually each of these methods of impeachment. Apparently in reference to Mrs. Dunbar, the trial court required the jury to consider a witness' "personal credibility" as shown by the evidence. A charge calling the jury's attention to the effect of "bad character" would have been more specific. Yet the court's charge required the jury to consider (1) "personal credibility" as a separate issue affecting believeability while at the same time calling the jury's attention separately to (2) impeachment by prior felony convictions (the accomplice), and (3) prior inconsistent denials by a witness that he knew anything about the incident at all (Banks). Thus, each form of impeachment involved was covered.

Where a charge as a whole substantially presents issues in such a way as is likely to furnish appropriate guidelines for the jury's consideration of the critical issues, and is not likely to confuse or mislead jurors even though a portion of the charge may not be as clear or concise as would be desired, a reviewing court should not disturb a verdict amply authorized by the evidence. *Todd v. Fellows,* 107 Ga. App. 783 (131 SE2d 577). We conclude that where, as here, the principle sought in the requested charge was substantially contained in the charge given, there was no error in failing to give the charge in the exact language requested. *Burnett v. State,* 240 Ga. 681 (7) (242 SE2d 79); *Howard v. State,* 151 Ga. App. 759, 760 (261 SE2d 483). We find no prejudice in the failure of the trial court to single out in specific words "bad character" where the issue was otherwise

covered.

2. In their second enumeration, appellants complain that the trial court erred in its charge on alibi by charging that the defense includes the impossibility of the accused's presence at the scene of the crime. Appellants complain that this thrust upon them the burden of showing the impossibility of their presence in violation of *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39). We reject this contention. A similar charge has been approved as correct. *Robinson v. State*, 229 Ga. 319, 320 (2) (191 SE2d 41); *Ricks v. State*, 156 Ga. App. 647, 648 (275 SE2d 730).

3. The remaining enumerations deal with the asserted failure of the trial court to charge on the effect of good character, the failure to grant a motion for directed verdict of acquittal and sufficiency of the evidence. Our perusal of the record leaves us no doubt that the trial court charged fully on the issue of good character, even using the same words as requested if not in the same order. The statement of facts heretofore set forth in this decision reflects the insubstantiality of any assertion that the evidence demanded a verdict for the appellants or that there was insufficient evidence to convince any reasonable jury of the guilt of the appellants beyond a reasonable doubt. The remaining enumerations of error are therefore without merit.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED MAY 26, 1981 —
REHEARING DENIED JUNE 16, 1981

*Larkin M. Fowler, Jr.,* for appellants.
*Lamar Cole, District Attorney, Richard W. Shelton, Assistant District Attorney,* for appellee.