A94A1493. ELLIS v. THE STATE.
(449 SE2d 882)

POPE, Chief Judge.

Defendant, Christopher K. Ellis, was convicted by a jury of armed robbery, aggravated assault, theft by taking and two counts of possession of a firearm during the commission of a crime. Defendant appeals his conviction and the denial of his motion for a new trial.

On August 23, 1993, Applebee's Restaurant in Rome, Georgia, was robbed by two masked men. The robbery took place between 11:30 p.m. and 11:45 p.m., approximately the same time the restaurant's employees began cleaning up the kitchen. Just prior to the robbery, one of the employees, James Oszust, went out the back door of the restaurant to clean some meat drawers. Oszust testified that as he walked out the back door he saw defendant, with a white mask on the top of his head, standing to the left of the door. He also testified that at that time he saw defendant's face for approximately three seconds. According to Oszust, when defendant and the other masked man saw him, defendant pulled down his white mask and both defendant and the other masked man immediately entered the restaurant. Oszust testified that upon entering the restaurant defendant struck him in the head numerous times with a nickeled .38 caliber pistol.

Once inside the restaurant the two masked robbers confronted the restaurant's manager, John Liner, and demanded he give them the money in the cash drawer and in the safe. Liner testified at trial that one of the robbers was waving around a silver-plated revolver. He also testified that one robber was wearing navy bluejean pants and a bluejean jacket and the other robber was wearing some sort of denim pants and a white long sleeve t-shirt. Additionally, Liner stated that one robber wore a white mask and the other a brown mask. During cross-examination Liner further testified that the robber wearing the white t-shirt wore the white mask and the rob-

ber clad in bluejean clothing wore the rust-colored mask. This testimony was further substantiated by that of another Applebee's employee, Shawn Grey, who testified that the man wearing the white shirt also was wearing the white mask.

After taking approximately $2,500 from the cash drawer and safe, the robbers fled from the restaurant through the back entrance. Grey, who had run into the parking lot, observed the robber in the white t-shirt and white mask jump over a fence at the rear of the restaurant, landing in a cemetery adjacent to the restaurant. Grey further observed that the robber in the white shirt threw down his white mask upon landing in the cemetery. A white stocking mask was recovered from the cemetery within one hour of the robbery by Detective Arrington of the Rome City Police Department.

At the time of the robbery, Officer Bill Devlin of the Rome Police Department was working in uniform, off duty, at a nearby Burger King. Within a few minutes of hearing on his radio that a robbery was in progress at the restaurant, he and Kelly Flowers, a private detective, got into Flowers' car and drove toward the restaurant. When they came into view of the cemetery behind the restaurant they saw defendant running from the cemetery toward a Toyota car lot. Defendant was dressed in tan pants and a long sleeve white shirt. Devlin and Flowers pursued defendant and subsequently apprehended him. Devlin and Flowers both testified at trial that when defendant was apprehended he was sweating profusely, as if having just had a good run. The record also shows that defendant was wearing at least two layers of clothing at the time of the arrest, even though it was a hot and humid night, and that defendant had two white nylon stockings, which appeared to be cut from a pair of pantyhose, in his front shirt pocket.

A show-up identification was conducted within approximately an hour of the robbery. The show-up took place in the parking lot of the Floyd Medical Center emergency room. Oszust had been taken there for treatment of the injuries he suffered during the robbery. The record shows that during the show-up Oszust was shown defendant and another suspect, both of whom were in the back seats of separate police cars. Although the show-up took place at night, testimony at trial shows that the parking lot was well lit and that the interior lights of the police cars were on. There is some contradictory testimony in the record as to the race of the other suspect, however, the record clearly shows that within a few seconds of seeing defendant's face, Oszust identified defendant as the robber he had seen at the restaurant.

1. In his first enumeration defendant argues that the trial court erred in failing to grant defendant's motion to exclude testimony concerning the pre-trial identification of defendant. Specifically, defendant argues that the show-up was impermissibly suggestive, creating a

substantial likelihood of irreparable misidentification, and thus evidence regarding it should not have been presented to the jury.

"Determination of whether a challenged pretrial identification must be suppressed requires a two-step analysis: first, it must be determined whether the identification procedure was impermissibly suggestive. If the inquiry is answered in the affirmative, then it must be determined whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification, with ensuing harm. *Payne v. State*, 233 Ga. 294 (210 SE2d 775) (1974)." *Morgan v. State*, 197 Ga. App. 823, 824 (399 SE2d 578) (1990). "Although one-on-one show-ups have been sharply criticized, and are inherently suggestive, the identification need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure." *Jefferson v. State*, 206 Ga. App. 544, 546 (425 SE2d 915) (1992). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U. S. 188, 199-200 (93 SC 375, 34 LE2d 401) (1972).

When we apply the guidelines set forth above to this case, we conclude that the trial court did not err in denying defendant's motion. In this case, Oszust testified that he had received law enforcement training when he worked for a sheriff's department prior to his employment at the restaurant. Additionally, Oszust testified that when he went out the back door of the restaurant defendant was in a well-lighted area and that Oszust saw defendant's face for several seconds before defendant pulled down his mask. The record shows that within an hour of the robbery defendant was brought to the Floyd Medical Center for the show-up and that it took Oszust only a few seconds to positively identify defendant as the robber he saw. During a preliminary hearing that took place on September 29, 1993, the trial court specifically asked Oszust whether his identification of defendant at the hearing was based on the show-up or on seeing defendant at the restaurant the night of the robbery. Oszust stated that his identification of defendant at the hearing was based upon seeing defendant at the restaurant. During the in-court identification of defendant at trial, Oszust again unequivocally stated that his identification of defendant was based upon seeing defendant behind the restaurant the night of the robbery, and was not based on the show-up. Consequently we conclude that the trial court was justified in its finding that, considering the totality of the circumstances, no misidentification had occurred. This is further substantiated by the trial court's

own statement at the preliminary hearing that Oszust's identification of defendant was "positive" and "certain."

2. In his second enumeration defendant argues that the trial court erred in failing to instruct the jury on impeachment in accordance with defendant's fourteenth request to charge. This argument also has no merit. In this state, " '(i)t is a fundamental rule . . . that jury instructions must be read and considered as a whole in determining whether the charge contained error.' (Citation and punctuation omitted.)" *Gordon v. State*, 210 Ga. App. 224, 226 (2) (435 SE2d 742) (1993); *Bass v. State*, 208 Ga. App. 859, 861 (432 SE2d 602) (1993). Here, the trial court's charge to the jury included specific instructions on witness credibility, identity and circumstantial evidence. These instructions and the charge as a whole incorporate the principle set forth in defendant's fourteenth request to charge and therefore the trial court's refusal to charge the jury in the exact language requested by defendant was not error. See *Nash v. State*, 158 Ga. App. 791, 793 (1) (282 SE2d 358) (1981); *Howard v. State*, 151 Ga. App. 759, 760 (261 SE2d 483) (1979).

3. In his final enumeration of error, defendant argues that the evidence at trial was not sufficient to support his convictions for the offense of possession of a firearm during the commission of a crime. Specifically, defendant contends that the State failed to prove beyond a reasonable doubt that a real gun was used during the robbery. We disagree. The record shows that both Oszust and Liner testified that they saw one of the robbers brandishing a nickel/silver-plated pistol during the robbery. Oszust further testified that defendant used the gun, which Oszust described as a .38 caliber, to strike him on the head several times, thereby causing injury to Oszust. Neither Oszust's nor Liner's testimony regarding the gun was contradicted or refuted at trial. Moreover, we note that defendant's own attorney introduced the term "pistol-whipped" to the jury without seeking to clarify whether or not the gun used to strike Oszust was real or not. Viewing the evidence in a light most favorable to the jury verdict, we conclude that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that a real gun was used by defendant during the robbery, and therefore, that defendant was guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also *Hogan v. State*, 210 Ga. App. 122 (435 SE2d 494) (1993).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 24, 1994.

*Jay L. Palmer*, for appellant.

*Stephen F. Lanier, District Attorney, Lisa W. Pettit, Assistant District Attorney,* for appellee.