68350. PURVIS v. THE STATE.

BIRDSONG, Judge.

Roy C. Purvis was convicted of illegally shrimping in the inland waterways and operating his trawler at night without running lights. He was sentenced to pay a $250 fine as to each violation and to be suspended from fishing in Georgia waters for 30 days. Purvis brings this appeal enumerating two alleged errors. *Held*:

1. Purvis argues that the evidence does not establish his presence at the scene of the crime and thus does not sustain the conviction. Viewing the evidence in the light most favorable to the verdict (*Thomas v. State*, 245 Ga. 688, 690 (1) (266 SE2d 499), vacated on other grounds 449 U. S. 988 (101 SC 523, 66 LE2d 285), reaffirmed 247 Ga. 233), we find the jury was warranted in accepting the following as having occurred. Prior to December 1978, officers of the Department of Natural Resources (DNR) received reports of illegal power net shrimping in the inland waters in Camden County. Rather elaborate plans were laid to surveil the area suspected of being violated. Two DNR vessels were positioned in strategic areas and conducted a moving investigation of the area. One of these boats, manned by two experienced DNR agents, overheard the motors of rather large boats being run under strain, such as would occur in seining operations. The DNR vessel moved to a more advantageous posi-

tion and observed two motor vessels moving in an advancing "X" maneuver, crossing each other's bow and obviously pulling a shrimp net to the stern of each vessel.

The captain of the DNR vessel almost simultaneously overheard a CB radio transmission very close by, and apparently emanating from these two boats. One CB operator made a call to "Captain Roy" and informed Captain Roy that he (the operator) had snagged his net in a stump and had required a major pull to free the net. The captain of the DNR boat had heard that voice on numerous other occasions over a CB transmission and identified the voice as belonging to the captain of the motor vessel "The Laughing Gull," Captain Bobby Stubbs.

Captain Roy responded on CB and reminded Captain Stubbs that they were dragging in "virgin" waters and, in effect, could expect to encounter obstructions such as underwater stumps. Further comments by Captain Roy amounted to statements that they had fished there before and planned to drag there again the next night. The captain of the DNR vessel also had heard the voice of Captain Roy over a CB radio on numerous occasions and identified the voice as that of Roy C. Purvis, captain of several boats, one of which was the motor vessel, "Winnie C."

The DNR vessel proceeded into the channel and moved close to the two shrimping trawlers with its spotlight trained first on one and then the other vessel. The first vessel was identified as The Laughing Gull and Captain Bobby Stubbs was seen on the deck of the vessel. The second vessel was identified as The Winnie C but Captain Purvis was not observed out on the deck. The DNR vessel suspected that a third vessel was in the area and therefore radioed its backup support DNR vessel to take custody of The Laughing Gull and Winnie C. The first DNR vessel left the area, but by the time the second DNR vessel arrived, only The Laughing Gull was still there. Approximately four hours later, the Winnie C was observed moving under a draw bridge in the direction of its normal berthing area. Shortly thereafter, the Winnie C docked at its usual berth. At that time, Captain Purvis was aboard. On the deck of the Winnie C was a substantial pile of medium shrimp mixed with "trash" fish normally encountered in the inland waterways as opposed to larger fish normally caught outside the three-mile limit where shrimping was authorized.

Purvis moved for a directed verdict of acquittal on the ground that he was not seen aboard his vessel at the time it was illegally seining for shrimp and was not seen thereon until several hours later when the vessel docked. Although Purvis offered no evidence on the point, he argued through the medium of cross-examination that there were several places at which he could have boarded his vessel from the time it was seen illegally shrimping until the time he was found

aboard his vessel several hours later. In substance, Purvis argues that there is a reasonable explanation of his subsequent presence aboard consistent with his innocence and for that reason the trial court should have directed the verdict of acquittal.

There was evidence offered that it is sometimes difficult to identify voices over a CB radio either as to the identity of the transmitter's voice or as to the direction or distance of the transmission's origin. On the other hand, the DNR agent testified that he was more certain than not that the two voices he heard were coming from the two vessels which were in the very near proximity because of the strength of the signal. He identified the voices overheard on the CB transmissions and the probable identity of the two boats before physically seeing the boats or the respective captains of those boats, whose voice identifications were wholly consistent with the later proven facts.

While the verdict of guilty may not have been absolutely demanded, it was not necessary for the State to prove that it was impossible for the offense to have been committed by someone else, or that it might not, by bare possibility have been done by another. *Pinson v. State*, 235 Ga. 188, 190 (219 SE2d 125). Questions of reasonableness are generally to be decided by a jury and if the jury is authorized by the evidence to find appellant guilty, the appellate court will not disturb the finding unless the verdict of guilty is unsupported as a matter of law. *Harris v. State*, 236 Ga. 242, 245 (223 SE2d 643).

In this case, common sense dictates that a captain will be embarked upon his vessel while it is engaged in normal boat business, unless reasonable, explanatory evidence is offered that for pressing reasons the captain was required to join his crew and vessel at a later time after the vessel was underway. There is no evidence in this trial of such a circumstance other than bare speculation. Opposed to this speculation is competent evidence that the captain was indeed present with his vessel while the vessel was engaged in fishing activities because he was overheard discussing these fishing activities with the captain of a second vessel in his company. Thus, the contention that Purvis might not have been aboard when the Winnie C was observed in illegal shrimping activities is a mere unfounded theory, and not a reasonable hypothesis negating the jury's application of the rules of circumstantial evidence to reach findings of guilt. *Eason v. State*, 217 Ga. 831, 840 (2) (125 SE2d 488). Under the facts presented to the jury, it was authorized to find the evidence, though circumstantial, sufficient to exclude every reasonable hypothesis save that of guilt. These facts therefore were sufficient to convince any rational trier of fact of Purvis' guilt beyond reasonable doubt. *Baldwin v. State*, 153 Ga. App. 35, 37 (264 SE2d 528). This enumeration of error is without merit.

2. In his second enumeration of error, Purvis contends that the trial court erred to his material prejudice by declining to charge upon the issue of misidentification. Purvis made several written requests for a charge upon this issue.

At the outset, we note that this defense related more in point to an issue of alibi than upon misidentification. Purvis does not seriously contest that the Winnie C was observed in the inland waterways illegally seining for shrimp; he simply argues that no direct evidence places him on the vessel at the particular time the vessel was observed engaging in that illegal activity. He does not dispute that at the first opportunity presenting itself for officers to board his vessel, he was aboard and in command. Thus, the question is not so much whether some person other than Purvis was incorrectly identified as Purvis but whether Purvis was aboard his vessel throughout its voyage. Any possible issue of misidentification must arise out of the question of whether the voice overheard on the CB radio was that of Purvis or came from some other boat at a different location and, thus, was not the voice of Captain Purvis. Such evidence must be considered as to its weight and not its admissibility, which is a jury function. This question was fully explored in examination and cross-examination. The trial court required the jury to find that the State had proved beyond reasonable doubt all the essential facts and circumstances to show the commission of the acts charged and to connect Purvis himself as the party committing the acts. This was directly connected to and part of the charge on circumstantial evidence.

We conclude that the issue of misidentification in the traditional language of seeing and mistakenly identifying a stranger as the accused was not the specific issue raised in this case. Thus, the requested charges were not tailored to the evidence presented, tended to be somewhat argumentative, and the evidence did not raise the issue so clearly that a refusal to give the charges requested would be error. *Kessel v. State*, 236 Ga. 373, 374 (223 SE2d 811); *McRae v. State*, 145 Ga. App. 122 (243 SE2d 110). The actual charge given did relate to the issues raised and thus was sufficient. See *Burnett v. State*, 240 Ga. 681, 687 (7) (242 SE2d 79); *Howard v. State*, 151 Ga. App. 759, 760 (261 SE2d 483). We find no error in the denial of the requested charges on misidentification.

*Judgment affirmed. Quillian, P. J., and Carley, J., concur.*

DECIDED JUNE 21, 1984 —
REHEARING DENIED JULY 11, 1984.

*Robert M. Cunningham*, for appellant.
*Glenn Thomas, Jr.*, District Attorney, *James A. Chamberlin, Jr.*,