## A06A1057. REAGAN v. THE STATE.
(637 SE2d 113)

BARNES, Judge.

James Randall Reagan appeals his convictions for aggravated assault and kidnapping, arguing that the trial court erred by denying a motion for directed verdict on two murder counts against him. He also contends that the trial court erred by charging the jury that aggravated assault is a lesser included offense of malice murder and that the evidence was insufficient to support his kidnapping conviction. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that on February 28, 1990, Paul McKeen, Jr., was found on the side of the road off Highway 190 in Meriwether County. He had been severely beaten and subsequently died after his life support was withdrawn. In September 2004, four men were indicted for McKeen's death: Reagan, Charles Aldon Bulloch, Guy Hardaway, and Johnny Phillips. Count 1 of the indictment charged them with malice murder, causing McKeen's death by striking him; Count 2 charged them with felony murder, the underlying felony being kidnapping. The jury convicted Bulloch and Phillips[1] of malice murder and felony murder, acquitted Hardaway, and convicted Reagan of the lesser included offenses of kidnapping and aggravated assault.

The evidence showed that Reagan was a friend and associate of Bulloch, who was a drug dealer. A week before his death, McKeen and Bulloch fought because McKeen owed money for cocaine, and Bulloch told him if he did not pay the next time he saw him, he would kill him. On the evening of February 27, 1990, McKeen was with his wife in a bar called "The Pub," along with Reagan, Bulloch, Hardaway, and Phillips. McKeen and Bulloch played a game of pool, with the stakes being "double or nothing" on a debt, and Bulloch won. Jerry Duck testified that he saw McKeen leave The Pub and soon afterward Reagan, Hardaway, and Phillips followed him out in a hurry while

---

[1] The Supreme Court of Georgia affirmed Phillips' conviction in *Phillips v. State*, 280 Ga. 728 (632 SE2d 131) (2006).

Bulloch watched. Duck said he knew something was going on. McKeen's wife last saw him talking to Reagan and another man who was not charged with this crime.

Later that evening, Bulloch and Phillips took McKeen in Bulloch's Mustang convertible to an overlook on Pine Mountain. Michael Railey followed them there to buy drugs from Bulloch. When Railey approached Bulloch's car, McKeen asked him for a ride back to The Pub. Phillips, seated in the back seat of the Mustang with McKeen, told Railey that McKeen would stay with them because he was either going to pay the money he owed or be beaten. Railey testified that "it seemed like" Reagan was in the crowd on the overlook.

The next morning, Bulloch went to the home of Robert Pearson, a drug dealer who regularly monitored police scanners. Bulloch asked Pearson if he had heard anything about "anything on top of the mountain." He also told Pearson he was leaving town for a while and needed a supply of cocaine because he, Reagan, Hardaway, and Phillips had severely beaten "that McKeen boy" over a debt. Bulloch said that McKeen "wouldn't never owe me no more money." That same morning, McKeen was found unconscious and barely alive beside a remote road. He was taken to a hospital where doctors determined that blunt force trauma to the head had caused severe brain damage. He had been beaten multiple times with a long, linear, blunt instrument, and died several days later when his life support was disconnected.

A sheriff's investigator testified that when he interviewed Reagan on March 22, 1990, Reagan had a "road rash" on his arms and face similar to the rash found on McKeen's body. The rash was consistent with McKeen having rolled on asphalt or been tossed from a moving vehicle while unconscious.

Reagan's former girlfriend and her daughter, who lived with Reagan after McKeen's death, testified that Reagan threatened to kill them "like he killed that boy on the mountain." Reagan commented to a friend that "we killed him," and when the friend asked what he was talking about, said, "Never mind. I've said enough already." Finally, the State introduced similar transaction evidence that on February 11, 1990, Bulloch savagely beat a man he suspected of theft while Reagan stood by, holding his pool cue. Reagan's pool cue was valuable, and he carried it with him wherever he went.

1. Reagan argues that the trial court erred in denying his motion for directed verdicts on the two murder counts because the State failed to prove McKeen's cause of death. The only evidence on that issue was by the emergency room physician, who was not actually present when McKeen died, and thus, Reagan argues, the doctor's testimony as to McKeen's cause of death was merely speculative. Because the jury acquitted Reagan of murder, however, convicting

him of the lesser included offenses of aggravated assault and kidnapping, his motion for a directed verdict on the murder counts is moot. *Scott v. State*, 257 Ga. App. 816 (572 SE2d 357) (2002).

Further, the Supreme Court of Georgia has considered and rejected this argument in *Phillips v. State*, supra, holding that

> the testimony of the final attending physician, or that of the person who conducted the autopsy, is not a legal necessity for a conviction. See *Curtis v. State*, 224 Ga. 870 (1) (165 SE2d 150) (1968) (even without an autopsy, testimony of a physician as to the life-threatening nature of visible wounds was sufficient evidence to establish the cause of death and to support a guilty verdict). The evidence authorized the jury to find that McKeen died as a result of blows inflicted by Phillips, and to find Phillips guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Id. at 729. Thus, this enumeration has no merit.

2. Reagan contends that the trial court erred in charging the jury that he could be convicted of aggravated assault as a lesser included crime of malice murder. Count 1 of the indictment charged that Reagan "did unlawfully and with malice aforethought cause the death of Paul McKeen, Jr., a human being, by striking him, contrary to the laws of said State, the good order, peace and dignity thereof." In the absence of language in the indictment charging him with striking McKeen with an object to cause serious injury, Reagan argues, the only possible lesser included crime is battery. The State responds that Reagan was on notice that he was being charged with having struck the victim hard enough to cause him to die, and thus also on notice that he could be convicted of having struck the victim hard enough to cause serious injury, which constitutes aggravated assault.

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense.

*DePalma v. State*, 225 Ga. 465, 469-470 (3) (169 SE2d 801) (1969). All of the essential elements of the crime of which the defendant is convicted must be included in the indictment, as a conviction upon a

charge not made or upon a charge not tried constitutes a denial of due process. *DeFrancis v. Manning*, 246 Ga. 307, 309 (271 SE2d 209) (1980).

Aggravated assault may merge into malice murder as a matter of fact, *Young v. State*, 280 Ga. 65, 66 (2) (623 SE2d 491) (2005), and therefore it may constitute a lesser included offense of malice murder. "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith intent to murder." OCGA § 16-5-21 (a) (1). There are two essential elements to establish the offense: (1) that an assault was committed on the victim as defined by OCGA § 16-5-20; and (2) that it was aggravated by an intention to murder. "Attempting to commit a violent injury to a person, or committing an act which places a person in reasonable apprehension of immediately receiving a violent injury, will satisfy OCGA § 16-5-20." *King v. State*, 178 Ga. App. 343, 344 (1) (343 SE2d 401) (1986). Thus an indictment charging that the defendant "did unlawfully and with malice aforethought cause the death of Paul McKeen, Jr., a human being, by striking him" places the defendant on notice that he could be convicted of assaulting the victim with the intent to murder him or to commit a violent injury. The only difference is that the malice murder indictment alleges that the defendant actually accomplished the murder, in addition to having intended to accomplish the murder. Accordingly, the trial court did not err in charging the jury that Reagan could be convicted of aggravated assault as a lesser included crime of malice murder.

3. Finally, Reagan contends that the evidence was insufficient to find him guilty of kidnapping, arguing that no evidence showed that the victim got into the back seat of Bulloch's car "by anything other than his own free will," or that Reagan was in any way involved in the victim's departure from The Pub. To the contrary, evidence established that Reagan was at least a party to the crime of kidnapping. A party to a crime is one who intentionally aids or abets the commission of the crime. OCGA § 16-2-20. "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Citation and punctuation omitted.) *Hewitt v. State*, 277 Ga. 327, 329 (1) (a) (588 SE2d 722) (2003). As outlined in Division 1, a witness saw Reagan follow the victim out of The Pub in a hurry, and the victim's wife last saw him talking to Reagan. Bulloch told another witness the next morning that he, Reagan, and the other co-defendants had severely beaten the victim over a drug debt. An eyewitness testified that the victim wanted a ride back to the bar from the overlook, but Reagan's co-defendant would not let him leave. Reagan's former girlfriend and her daughter testified that Reagan admitted killing the victim, and the State introduced similar transaction evidence that Reagan stood by while Bulloch savagely beat another man before this incident.

OCGA § 16-5-40 defines kidnapping as abducting a person and holding him against his will. The jury in this case was authorized to find that the victim was held against his will, and that Reagan was a party to that crime.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Reagan guilty beyond a reasonable doubt of kidnapping. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Brown v. State*, 278 Ga. 724, 726 (1) (609 SE2d 312) (2004).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 2, 2006.

*Robert L. Wadkins, David E. Webb, Jennifer E. Dunlap*, for appellant.

*J. Gray Conger, District Attorney, Raymond C. Mayer, Assistant District Attorney*, for appellee.