A07A1976. KNOX v. THE STATE.
(658 SE2d 819)

MILLER, Judge.

Following a jury trial, Robert Charles Knox was convicted of four counts of failure of duty upon striking an unattended vehicle (in violation of OCGA § 40-6-271), two counts of failure to obey a traffic device (in violation of OCGA § 40-6-20), and a single count each of aggravated assault, interference with government property, attempting to evade a police officer, obstruction of a law enforcement officer, reckless driving, and driving under the influence (in violation of OCGA §§ 16-5-21, 16-7-24 (a), 40-6-395 (b) (5) (A), 16-10-24 (a), 40-6-390, and 40-6-391 (a), respectively). He now appeals from the trial court's denial of his motion for a new trial, alleging that he received ineffective assistance of counsel and asserting that the trial court erred in (i) limiting his cross-examination of a prosecution witness, (ii) invading the province of the jury by instructing them that an automobile was a weapon, and (iii) failing to charge the jury as to an essential element of the crime of destruction of government property. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on the evening of January 20, 2005, Athens-Clarke County police officer Thomas Carrell encountered Knox arguing with a friend in a parking lot on the University of Georgia campus. Despite the officer's repeated admonitions, Knox started his truck and backed out of his parking space, sideswiping one vehicle and running into another.

Knox then exited the parking lot onto a public street, where he struck two more parked cars. Knox was seen by Detective Jeff Clark who began to pursue Knox with his blue police lights flashing.

Officer Chris Nichols eventually assumed the pursuit of Knox, and he was joined by a second officer, Brenan Baird. Both officers were in marked patrol cars and were operating their lights and sirens, and each witnessed Knox's truck weaving over the roadway and saw it run two red lights. During the pursuit, Baird passed Knox, attempting to stop him with an approved maneuver known as a "rolling roadblock." Knox then pulled his truck out of its lane and passed Baird while driving on the wrong side of the road, striking and damaging Baird's patrol car in the process.

Knox eventually attempted to elude a police roadblock by leaving the road, ultimately entering the back yard of a private residence, where he struck another parked vehicle. Believing the chase was at an end, Baird and Nichols exited their patrol cars to apprehend Knox. Knox, however, attempted to flee, and when backing up his truck almost ran over Baird, who was forced to take evasive action.

Knox's attempted escape ended when his truck became stuck in some brush and the officers were able to remove him forcibly from his vehicle (Knox having declined to exit the same voluntarily). Knox was arrested and, because he exhibited significant signs of intoxication, was read Georgia's implied consent warning. Knox agreed to take the requested blood test, and Nichols transported him to Athens Regional Medical Center. Once there, however, Knox was uncooperative and took an aggressive stance towards Nichol. Believing that it would be unsafe to release Knox from his handcuffs, Nichols took Knox to the Athens-Clarke County jail where, after reading him the implied consent notice a second time, he asked Knox to submit to a breathalyzer test. Knox refused, and he was subsequently indicted on four counts of aggravated assault, four counts of failure of duty upon striking an unattended vehicle, two counts of failing to obey a traffic control device, and a single count each of interference with government property, attempting to evade a police officer, obstruction of a law enforcement officer, reckless driving, and driving under the influence.

Knox's defense was based on Georgia's involuntary intoxication statute, which provides, in relevant part:

(a) A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of involuntary intoxication, did not have sufficient mental capacity to distinguish between right and wrong in relation to such act.

(b) Involuntary intoxication means intoxication caused by:

(1) Consumption of a substance through excusable ignorance.

OCGA § 16-3-4.

At trial, Knox testified that he had no memory of the events leading to his indictment and that while he had been drinking that evening, he had not ingested enough alcohol to bring him to the point of significant intoxication. Specifically, his testimony was that he had consumed four beers and one mixed drink during an approximately four- to five-hour period. He explained that earlier in the day he had taken an over-the-counter "performance supplement," marketed as NO2 and purchased at a local branch of GNC, a national chain of "health food" stores. Knox had only been taking that supplement for just over a week, and he had never before combined it with alcohol. While the trial court permitted all of this testimony, it would not allow Knox to testify as to his theory that the supplement combined with the alcohol caused a chemical reaction triggering his blackout and rendering him unable to control his actions. Additionally, the trial court refused to give Knox's requested jury instruction on involuntary intoxication.

The jury acquitted Knox on three counts of aggravated assault but convicted him of all other charges. The trial court thereafter denied Knox's motion for a new trial, and this appeal followed.

1. Knox first asserts that he received ineffective assistance of counsel because, despite the fact that involuntary intoxication represented his only viable defense, his trial attorney failed to adequately research and present the same. We disagree.

In reviewing a trial court's ruling on an ineffective assistance of counsel claim, we "accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Wheat v. State*, 282 Ga. App. 655, 656 (639 SE2d 578) (2006).

"To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." (Citation and punctuation omitted.) *Rogers v. State*, 285 Ga. App. 568, 569 (1) (646 SE2d 751) (2007). To demonstrate deficient representation, a convicted criminal defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U. S. 668, 688 (104 SC 2052, 80 LE2d 674) (1984). Such a defendant must overcome the "strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise

of reasonable professional judgment." (Citation and punctuation omitted.) *Turpin v. Helmeci*, 271 Ga. 224, 226 (518 SE2d 887) (1999). "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. [Cit.]" Id.

Knox's claim that his trial counsel's performance was deficient is premised on counsel's failure to present expert testimony in support of Knox's involuntary intoxication defense. To support this claim, Knox cites the testimony of an expert witness, Dr. Marland Dulaney, a board certified toxicologist and pharmacologist, introduced at his motion for new trial hearing. Dr. Dulaney testified that the active ingredient in NO2, when combined with alcohol, could produce reactions such as confusion, changes in personality, and a decrease in a person's ability to comprehend facts and circumstances. He further opined that the combination could result in "blackouts," and that it was "very likely" at least some of Knox's behavior in this case resulted from his combining NO2 and alcohol. Dr. Dulaney also explained that because the NO2 was formulated for "long-term release" in the lower intestines, and because Knox had been taking the supplement for approximately ten days, there would have been sufficient NO2 in his system to cause such reactions, even though Knox had taken that day's dose in the morning.

Although his ineffective assistance claim is couched in terms of failure to retain an expert, Knox does not allege that his trial counsel declined to retain a readily available expert, or that he failed to conduct any sort of investigation into an involuntary intoxication defense. Rather, he appears to argue that a thorough investigation would have allowed trial counsel to locate a qualified expert in advance of trial.

As noted above, trial counsel's conduct in this regard must be judged under a standard of objective reasonableness. See *Strickland*, supra, 466 U. S. at 691 (In defending a client, "counsel has a duty to make reasonable investigations."); *Gibbs v. State*, 287 Ga. App. 694, 696 (652 SE2d 591) (2007). Thus, the question is whether trial counsel's investigation of Knox's defense was reasonable, even though it failed to lead to an expert competent to testify as to the potential effects of combining alcohol and NO2. We find that it was.

At the motion for new trial hearing, Knox's trial counsel confirmed that the theory of defense was involuntary intoxication, and that he and Knox discussed the possibility that the combination of NO2 and alcohol could have caused or contributed to Knox's conduct. His recollection was that the issue did not come up until "shortly before trial," and that he, Knox, and Knox's fiancé had also attempted to research on the internet the possibility that the combination of

NO2 and alcohol could cause such an involuntary chemical response, but that none of them was able to find any such information.

Dr. Dulaney testified that there was no readily available information on the effects of combining NO2 and alcohol, that he could not find where anybody else had ever researched this question, and that it took him two full working days to reach his conclusions regarding the same. Dr. Dulaney stated unequivocally that an attorney researching the possibility of such a chemical reaction would have been unable to find any information regarding the same. Dr. Dulaney further explained that only someone certified as both a pharmacologist and a toxicologist could make that determination, and that he could "count on one hand" the number of people who would be qualified to testify on this issue. Thus, Knox's own expert established that nothing short of an exhaustive search requiring extensive research would have allowed trial counsel to find a qualified expert. Under these circumstances, trial counsel's failure to locate an expert witness qualified to testify in support of Knox's involuntary intoxication defense did not render his performance deficient. See *Strickland*, supra, 466 U. S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

2. Nor do we find any merit in Knox's claim that the trial court erred in limiting his cross-examination of Baird regarding the collision between Baird's patrol car and Knox's vehicle.

"As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation and punctuation omitted.) *Rogers*, supra, 285 Ga. App. at 570 (2). A trial court is afforded considerable latitude in determining whether and to what extent to allow the cross-examination of an adverse witness regarding their potential bias. *Hewitt v. State*, 277 Ga. 327, 332 (2) (588 SE2d 722) (2003).

The collision at issue resulted in Knox being charged with one count of aggravated assault, one count of aggravated assault with a deadly weapon, and one count of interfering with government property. Prior to trial, the trial court granted the State's motion in limine to prevent Knox's trial counsel from questioning Baird about the fact that he had been suspended temporarily as a result of the rolling roadblock that led to the collision, because it had violated department policy.

On appeal, Knox claims that this limitation on his cross-examination of Baird prevented him from showing that Baird had a reason to be biased against him, thereby impeaching Baird's credibility. "[T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation

Clause errors, is subject to [a] harmless-error analysis." *Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SC 1431, 89 LE2d 674) (1986). In determining whether a defendant suffered harm, we examine factors such as

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Id.

At trial, Baird's testimony regarding his pursuit of Knox and the resulting collision was corroborated by Nichols and a police videotape that showed the rolling roadblock and the collision. Thus, there was evidence independent of Baird's testimony that was sufficient to support the jury's conviction of Knox on the charges arising out of the collision. Moreover, the trial court allowed Knox's counsel to cross-examine Baird with respect to both the Athens-Clarke County Police Department's pursuit policy and the fact that Baird had violated the same in pursuing Knox. Given these facts, any error by the trial court in limiting Baird's testimony did not harm Knox.

3. Knox next asserts that his conviction for aggravated assault must be reversed because the trial court impermissibly instructed the jury that an automobile was a weapon. This jury charge, however, related to the offense of aggravated assault with a deadly weapon, a count on which Knox was acquitted. Thus, any error in the trial court's instructions on that issue was harmless.

4. Finally, Knox challenges his conviction for interference with government property, claiming that (i) the trial court erred by failing to charge the jury as to an essential element of the crime of interference with government property, specifically that the State must prove that the property at issue belonged to the government; and (ii) that the State failed to prove who owned the patrol car that was damaged in the collision with Knox's vehicle.

The trial court charged the jury that "[a] person commits the offense of interference with government property when he destroys, damages, or defaces government property." Because this language is identical to that found in OCGA § 16-7-24 (a), the charge was proper. See *Trzepacz v. State*, 240 Ga. App. 410, 411 (3) (523 SE2d 599) (1999) ("A charge in the exact language of the statute shows no error.") (citation and punctuation omitted).

Furthermore, Baird testified that his patrol car was owned by the Athens-Clarke County Unified Government in the State of Georgia. Thus, the evidence showing that Knox collided with that patrol car was sufficient to allow the jury to find the essential elements of the crime charged. See *Arnold v. State*, 262 Ga. App. 61, 61 (584 SE2d 662) (2003); *Fields v. State*, 167 Ga. App. 400, 401-402 (2) (306 SE2d 695) (1983).

For the reasons set forth above, we affirm the trial court's order denying Knox's motion for a new trial.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MARCH 5, 2008 — 

*Brian Steel*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.