A08A1703. JOHNSON v. THE STATE.
(666 SE2d 452)

BLACKBURN, Presiding Judge.

Following a jury trial, Jeffrey Johnson was convicted on one count each of armed robbery,[1] possession of a knife during the commission of a felony,[2] theft by taking of a motor vehicle,[3] and criminal trespass.[4] He appeals his convictions and the denial of his motion for new trial, (i) challenging the sufficiency of the evidence supporting the armed robbery conviction and arguing that the trial court erred in (ii) admitting hearsay testimony, (iii) admitting testimony regarding canine tracking without the proper foundation, (iv) allowing a police officer to comment on his silence, (v) denying his motion for mistrial when the jury indicated that it was deadlocked, (vi) failing to charge the jury on witness identification, and (vii) admitting the testimony of witnesses who were not on the State's witness list. For the reasons set forth below, we affirm.

---

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [Johnson] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Berry v. State*.[5] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[6]

So viewed, the record shows that on the night of January 15, 2004, a man wearing a green ski mask, a dark coat, gloves, and glasses under his mask entered a Kangaroo convenience store, brandished a folding knife, and demanded that the two store clerks give him the money from the cash register. The female clerk standing near the cash register opened it, whereupon the man grabbed the money and fled from the store. After the man exited the store, the male clerk, who was standing near the store's entrance, saw the man drive away in a silver Ford pickup truck with a stripe down the side of the vehicle. Immediately following the robbery, the clerks called the police and provided a description of what the man was wearing and of his vehicle.

Approximately a half hour before the convenience store robbery occurred, two police officers had been called to investigate a report of property damage at a local office equipment company. Upon arriving at the company's address, the officers noticed that the gate to the fence surrounding the company's parking lot had been smashed open from the inside and that it had been scuffed with silver and black paint marks at the point of impact. Based on this evidence, the officers surmised that a vehicle from inside the company's parking lot had driven through the closed gate. While still at the scene, the officers learned that a silver Ford pickup truck belonging to one of the company's employees had been stolen from the parking lot. Before leaving the scene, the officers learned that the Kangaroo convenience store had just been robbed and that the suspect in that robbery had fled in a vehicle matching the description of the office equipment employee's stolen Ford pickup truck.

Later that same night, another officer on routine patrol received a call that a pickup truck matching the description of the stolen vehicle reportedly used in the convenience store robbery was seen attempting to back into some woods at the edge of an abandoned parking lot on the outskirts of town. Upon arriving at the scene, the officer saw the truck and, after calling in the vehicle's license plate

---

[5] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).
[6] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

number, confirmed that it was the pickup truck that had been stolen earlier from the office equipment company. The officer immediately called for backup, and within a few minutes, another officer, a specially-trained tracking dog, and the dog's handler arrived. With the tracking dog's assistance, the officers found a man, later identified as Jeffrey Johnson, sleeping near the edge of the woods approximately 50 yards away from where the pickup truck was parked. Johnson was wearing a jacket that fit the description of the jacket that the convenience store clerks claimed was worn by the robbery suspect. He was arrested, and in the search incident to his arrest, the officers found in his possession a folding knife, a ski mask, gloves, glasses, the key to the stolen pickup truck, and $88 in wadded-up bills.

Johnson was indicted on one count of armed robbery of the convenience store, one count of possession of a knife during the commission of a felony, one count of theft by taking of the office equipment employee's motor vehicle, and one count of criminal trespass for damaging the gate at the office equipment company's parking lot fence. At the conclusion of his trial, the jury found Johnson guilty on all four counts of the indictment. He filed a motion for new trial, which was denied. This appeal followed.

1. Johnson challenges the sufficiency of the evidence supporting his conviction on the count of armed robbery, arguing that because the indictment stated that the Kangaroo store was the owner of the property taken, it did not allege valid ownership, and further arguing that the State did not prove that he took the property of another. We disagree.

OCGA § 16-8-41 (a) provides: "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." The general rule that allegations and proof must correspond is based upon the requirements (1) that the accused is definitely informed of the charges against him so he can present his defense and not be surprised by the evidence at trial, and (2) that he is protected against another prosecution for the same offense. *Reagan v. State.*[7]

Here, the indictment alleges all of the elements of the offense of armed robbery in that Johnson "did, with intent to commit theft, take an amount of United States currency, the property of the Kangaroo store, . . . from the person and immediate presence of Heather Watson by use of a knife, an offensive weapon. . . ."

---

[7] *Reagan v. State*, 281 Ga. App. 708, 710 (2) (637 SE2d 113) (2006).

Johnson's contention that the indictment was defective because it stated that the convenience store was the owner of the money instead of a specific person is without merit. "There can be no reasonable doubt that [Johnson] was sufficiently informed of the charges against him and also protected from subsequent prosecution for the same crime." *Billups v. State*[8] (armed robbery indictment was not defective even when it did not state the exact legal name of the convenience store that owned the stolen property). Furthermore, "the gravamen of the offense of armed robbery is the taking of items from the possession of another by use of an offensive weapon, and not the ownership status of the item taken." (Punctuation omitted.) *McRae v. State*.[9] Thus, the evidence that Johnson took the money from the convenience store clerk while brandishing a knife was sufficient to allow a rational trier of fact to conclude that Johnson was guilty of armed robbery beyond a reasonable doubt. See *Billups*, supra, 241 Ga. App. at 827 (1).

2. Johnson contends that the trial court erred in allowing the patrol officer, who found the stolen pickup truck and arrested Johnson, to provide inadmissible hearsay. Specifically, Johnson asserts that the patrol officer's testimony about the briefing he received before going on duty, during which he received the description of the armed robbery suspect and the stolen pickup truck used in the armed robbery, should have been excluded as inadmissible hearsay. We disagree.

"This situation is one of the rare instances in which hearsay was properly used to explain the officer's conduct." (Punctuation omitted.) *Morrow v. State*.[10] The issue before the court with regard to this testimony was not whether Johnson committed the armed robbery or stole the pickup truck, but whether the briefing provided the officer with a reasonable and articulable suspicion justifying his investigation upon spotting the vehicle in the abandoned parking lot. See *Fisher v. State*;[11] *Morrow*, supra, 257 Ga. App. at 708 (2). "In forming his suspicion, [the officer] was entitled to rely on the information given him by a fellow officer." (Punctuation omitted.) *Fisher*, supra, 267 Ga. App. at 427. The descriptions provided during the briefing were thus admissible to explain the officer's reason for investigating upon spotting the pickup truck. See id.; *Morrow*, supra, 257 Ga. App. at 708 (2). Accordingly, the trial court did not err in allowing the patrol officer to testify about the description of the

---

[8] *Billups v. State*, 241 Ga. App. 825, 828 (3) (527 SE2d 905) (2000).

[9] *McRae v. State*, 252 Ga. App. 100, 101 (1) (b) (555 SE2d 767) (2001).

[10] *Morrow v. State*, 257 Ga. App. 707, 708 (2) (572 SE2d 58) (2002).

[11] *Fisher v. State*, 267 Ga. App. 426, 427 (599 SE2d 361) (2004).

robbery suspect and of the vehicle used in the robbery that he received during the briefing.

3. Johnson contends that the trial court erred in admitting testimony regarding canine tracking without foundation. We disagree. "[A]dmission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Punctuation omitted.) *Knox v. State*.[12] Pertinent Georgia law provides that

> evidence as to the conduct of dogs in following tracks should not be admitted until after a preliminary investigation in which it is established that one or more of the dogs in question were of a stock characterized by acuteness of scent and power of discrimination, and had been trained or tested in the exercise of these qualities in the tracking of human beings, and were in the charge of one accustomed to use them. It must also appear that the dogs so trained and tested were laid on a trail, whether visible or not, concerning which testimony has been admitted, and upon a track which the circumstances indicate to have been made by the accused. When these preliminary tests have been made, the fact of tracking by a bloodhound may be permitted to go to the jury as one of the circumstances which may tend to connect the defendant with the crime with which he is charged.

(Punctuation omitted.) *Bogan v. State*.[13]

In this matter, the patrol officer testified that after spotting the stolen pickup truck in an abandoned parking lot near some woods, he called for the tracking dog and its handler to assist in determining whether the person who had driven the truck was still in the vicinity. As the patrol officer began describing what happened when the dog arrived on the scene, Johnson's counsel objected on the ground that the patrol officer was not the dog's handler and that no foundation had been laid as to the dog's tracking abilities. In overruling this objection, the trial court stated that the patrol officer could testify as to his observations. Thereafter, the patrol officer testified that the dog circled the pickup truck and then went down a small hill approximately 50 yards away to where Johnson was found sleeping.

Johnson maintains that the trial court erred in allowing the patrol officer to describe the dog's tracking without a foundation

---

[12] *Knox v. State*, 290 Ga. App. 49, 53 (2) (658 SE2d 819) (2008).
[13] *Bogan v. State*, 165 Ga. App. 851, 853 (3) (303 SE2d 48) (1983).

being laid. However, an officer's testimony regarding his own observations is admissible. See *Simms v. State*.[14] Furthermore, "[w]here a proper foundation for evidence is afterward laid during the trial, there is no harm in allowing a party to use that evidence earlier in the trial." *Horton v. Hendrix*.[15] Here, the tracking dog's handler testified shortly after the patrol officer and provided a lengthy description of the dog's training and experience in tracking, as well as a description of his own training and experience as the dog's handler. After this foundation was laid without objection, the handler testified as to the dog's tracking of Johnson and Johnson's subsequent arrest. Accordingly, the trial court did not abuse its discretion in allowing the patrol officer to testify regarding the tracking dog's actions.

4. Johnson contends that the trial court erred in allowing the patrol officer to implicitly comment at trial upon his Fifth Amendment right to remain silent when questioned by law enforcement. Specifically, Johnson argues that the patrol officer's testimony regarding the fact that another detective interviewed him after his arrest created an inference that he had given a statement, which the jury was ultimately not permitted to hear. Pretermitting whether the patrol officer's testimony constituted an improper comment upon Johnson's exercise of his right to remain silent, Johnson failed to raise any objection to this testimony at trial and thus waived this issue for appeal. See *Glover v. State*;[16] *Wallace v. State*.[17]

5. Johnson contends that the trial court erred in failing to grant a mistrial and in asking the jury to continue deliberating when the jury indicated that it was deadlocked after a little more than a day of deliberations. We disagree. "It is within the discretion of the trial court, not the jury, to determine when the jury is hopelessly deadlocked so as to require a mistrial." *Robinson v. State*.[18] It is also within the trial court's discretion to determine whether and when to give an *Allen* charge. *Ramos v. State*.[19] "The decisive factor is not the length of the deliberation, but the inability of the jury to agree on a verdict." Id.

In this matter, after deliberating for approximately three and a half hours, the jury informed the trial court that it was unable to reach a unanimous decision and that the current vote was nine to two with one undecided. In response, the trial court asked the jury to

---

[14] *Simms v. State*, 223 Ga. App. 330, 333 (2) (477 SE2d 628) (1996).

[15] *Horton v. Hendrix*, 291 Ga. App. 416, 422-423 (2) (e) (662 SE2d 227) (2008).

[16] *Glover v. State*, 280 Ga. 476, 477 (2) (629 SE2d 249) (2006).

[17] *Wallace v. State*, 272 Ga. 501, 503 (2) (530 SE2d 721) (2000).

[18] *Robinson v. State*, 281 Ga. App. 76, 80 (4) (635 SE2d 380) (2006).

[19] *Ramos v. State*, 252 Ga. App. 106, 108 (2) (555 SE2d 779) (2001).

resume its deliberations. Approximately one hour later, the jury informed the court that the vote was eleven to one and that although it had made some progress, it now felt that it had "hit a wall." However, in response to the trial court's query, the jury indicated that it was willing to continue deliberating the next morning. Consequently, the trial court asked the jury to return in the morning to resume its deliberations and then recessed for the evening. At that time, Johnson moved for a mistrial, which the trial court denied.

The next day after deliberating for approximately two more hours, the jury informed the trial court that the vote was still eleven to one and that it did not think that further deliberations would resolve the matter. When the trial court questioned the jury collectively as to whether more deliberations could break the impasse, one of the jurors stated that the majority of the jury believed that the dissenting voter was ignoring the evidence. Following this discussion, the trial court sent the jury out so that it could hear argument from counsel on the issue. Johnson again moved for a mistrial, but the State requested that the trial court instead give an *Allen* charge. The trial court denied Johnson's motion for a mistrial and gave the jury the pattern *Allen* charge.[20] Thereafter the jury resumed its deliberations, and a short time later, it returned guilty verdicts on all counts of the indictment.

Johnson argues that the trial court's failure to grant a mistrial coerced the jury into rendering the guilty verdicts. "Whether a verdict was reached as the result of coercion depends on the totality of the circumstances." *Sears v. State*.[21] See *Jenkins v. United States*.[22] Here, the jurors deliberated for approximately six and a half hours over a period of two days before reaching their verdict. After being provided the *Allen* charge, the jury resumed deliberations and returned with a unanimous verdict. In addition, each of the jurors stood by that verdict upon being polled by the trial court. Under these circumstances, we cannot find that the jury was coerced into rendering its verdict, or that the trial court abused its discretion when it provided an *Allen* charge and denied Johnson's motion for mistrial. See *Sears*, supra, 270 Ga. at 838 (1) (no error in denying mistrial when jury considering death penalty had twice stated over nine hours that it was deadlocked); *Pendley v. State*[23] (trial court did not err in denying mistrial or giving *Allen* charge when jury stated

---

[20] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Sec. 1.70.70, pp. 46-47 (3d ed. 2003). We note that the trial court provided the *Allen* charge as approved in *Burchette v. State*, 278 Ga. 1, 2-3 (596 SE2d 162) (2004).

[21] *Sears v. State*, 270 Ga. 834, 837 (1) (514 SE2d 426) (1999).

[22] *Jenkins v. United States*, 380 U. S. 445, 446 (85 SC 1059, 13 LE2d 957) (1965).

[23] *Pendley v. State*, 283 Ga. App. 262, 263-264 (2) (641 SE2d 174) (2006).

twice over two days that it was deadlocked); *Albert v. State*[24] (no error in denying mistrial when jury announced twice over ten hours that it was deadlocked).

6. Johnson also contends that the trial court erred in failing to charge the jury on witness identification, arguing that such a charge was required because his sole defense was that he was not the person who committed the armed robbery or stole the pickup truck. We disagree. In this matter, Johnson did not submit a written request for a charge on witness identification. In fact, during the charge conference, Johnson's counsel agreed with the trial court that witness identification was not a relevant issue in the case. "Generally, the failure to request the subject charge in writing precludes further complaint." *Whitaker v. State.*[25] Furthermore, "even the review of substantial error under OCGA § 5-5-24 (c) is not available when the giving of an instruction, or the failure to give an instruction, is induced during trial by counsel for the complaining party or specifically acquiesced in by counsel." (Punctuation omitted.) *Brewer v. State.*[26]

Pretermitting whether Johnson has waived this issue, we conclude that the trial court's failure to charge the jury on witness identification was not error. "If any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised by the evidence, denial of the charge request is proper." (Punctuation omitted.) *Revere v. State.*[27] Here, the State's case against Johnson was based upon the significant amount of circumstantial evidence connecting him to the crimes. There was no eyewitness testimony that specifically identified Johnson as the perpetrator of the armed robbery or of the theft of the pickup truck. Indeed, as previously noted, both the trial court and Johnson's counsel agreed that identification was not a relevant issue. Thus, even if Johnson had requested a charge on witness identification, such a charge would have been properly denied as not being authorized by the evidence. See *Bryant v. State*[28] (identification charge not required when not authorized by the evidence); *Purvis v. State*[29] (trial court did not err in refusing to give charge on identification when issue of seeing and mistakenly identifying a stranger as the accused was not the issue raised in the case). Accordingly, the

---

[24] *Albert v. State*, 180 Ga. App. 779, 786 (8) (350 SE2d 490) (1986).

[25] *Whitaker v. State*, 283 Ga. 521, 526 (4) (661 SE2d 557) (2008).

[26] *Brewer v. State*, 280 Ga. App. 582, 583 (2) (634 SE2d 534) (2006).

[27] *Revere v. State*, 277 Ga. App. 393, 395 (2) (626 SE2d 585) (2006).

[28] *Bryant v. State*, 268 Ga. 664, 668 (11) (492 SE2d 868) (1997).

[29] *Purvis v. State*, 171 Ga. App. 572, 575 (2) (320 SE2d 559) (1984).

trial court did not err in failing to charge the jury on witness identification.

7. Johnson contends that the trial court violated OCGA § 17-16-8 (a) by allowing the testimony of two witnesses whose names had not been furnished to the defense prior to trial. We disagree. OCGA § 17-16-8 (a) requires the prosecuting attorney to furnish to the defense not later than ten days prior to trial, the names and other identifying information of the State's trial witnesses. The trial court may "for good cause" allow an exception to this requirement, "in which event the [defense] shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify." Id.

In this matter, the manager of the office equipment company, who was on the State's original witness list and who was going to testify regarding the cost incurred to fix the damage to the company's gate caused by the criminal trespass, sustained a serious back injury the day before he was scheduled to testify. The State only learned of the manager's injury on the day he was to testify but at the same time also learned that the company's bookkeeper and a repairman could provide testimony regarding the cost incurred to fix the gate. Johnson's counsel was given an opportunity to speak with both the repairman and the bookkeeper before they testified, but he nevertheless objected to the State's adding them as witnesses during the middle of trial. However, when the trial court offered Johnson's counsel a continuance so that he could more thoroughly interview both witnesses, he declined. "Generally, a defendant has a duty to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of OCGA § 17-16-1 et seq." (Punctuation omitted.) *Gabriel v. State.*[30] Under these circumstances, we find no abuse of the court's discretion in allowing the witnesses to testify. See id. at 239-240 (4); *State v. Dickerson.*[31]

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 24, 2008.

*Kristopher Shepherd*, for appellant.

---

[30] *Gabriel v. State*, 280 Ga. 237, 239 (3) (626 SE2d 491) (2006).
[31] *State v. Dickerson*, 273 Ga. 408, 411 (2) (542 SE2d 487) (2001).

*Kenneth W. Mauldin, District Attorney, Leslie S. Jones, Assistant District Attorney*, for appellee.